2015 PA Super 176

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SHAWN LAMAR BURTON, | |
| Appellant | No. 1459 WDA 2013 |

Appeal from the PCRA Order August 27, 2013
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CR-02-CR-0004017-1993
and CP-02-CR-0004276-1993

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA, DONOHUE, SHOGAN, MUNDY, OLSON AND OTT, JJ.

OPINION BY BENDER, P.J.E.:                    **FILED AUGUST 25, 2015**

Shawn Lamar Burton (Appellant) appeals *pro se* from the order entered August 27, 2013, denying as untimely his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We conclude that the record before us is insufficient to determine whether Appellant's petition satisfies the after-discovered facts exception to the one-year time requirement of the PCRA.  *See* 42 Pa.C.S. § 9545(b)(1)(ii).  In so doing, we clarify the due diligence required of untimely petitioners and recognize a limited exception to the "public records" rule, which presumes that petitioners have access to information available in the public domain. Accordingly, we vacate the PCRA court's order and remand for an evidentiary hearing.

In September 1993, a jury convicted Appellant of first-degree murder and conspiracy in connection with the strangulation death of Seth Floyd in the Allegheny County Jail. Thereafter, the court imposed the mandatory sentence of life imprisonment. Appellant's co-defendant, Melvin Goodwine, was convicted of conspiracy but acquitted of the murder charge.

Appellant timely appealed from the judgment of sentence, and this Court affirmed. *See **Commonwealth v. Burton***, 688 A.2d 1225 (Pa. Super. 1996) (unpublished memorandum). On August 15, 1997, the Pennsylvania Supreme Court denied allowance of appeal. ***See Commonwealth v. Burton***, 700 A.2d 437 (Pa. 1997). Appellant did not petition the United States Supreme Court for writ of *certiorari*.

In August 1998, Appellant filed *pro se* his first PCRA petition. Counsel was appointed but subsequently withdrew due to a disagreement with Appellant. Appellant proceeded *pro se*. Thereafter, the PCRA court dismissed his petition in April 2000. New counsel was appointed and effectuated an appeal, which was dismissed in November 2001 for failure to file a brief. However, counsel successfully sought reinstatement of Appellant's appellate rights *nunc pro tunc* and timely appealed.

On review, the PCRA court's failure to conduct an on-the-record colloquy to determine whether Appellant properly waived his right to his first PCRA counsel resulted in remand by this Court and further proceedings below not relevant to this appeal. Eventually, the PCRA court again denied

Appellant's first petition in December 2005. This Court affirmed, **see Commonwealth v. Burton**, 924 A.2d 688 (Pa. 2007) (unpublished memorandum), and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. **See Commonwealth v. Burton**, 936 A.2d 39 (Pa. 2007).

On May 30, 2013, Appellant purportedly received a letter from the Pennsylvania Innocence Project (dated May 23, 2013). Enclosed with the letter were copies of (1) a motion to expunge criminal record filed by co-defendant Melvin Goodwine, in July 2009, and (2) a court opinion thereafter denying the motion. In his motion to expunge, Goodwine averred that (1) he (Goodwine) killed Seth Floyd in self-defense, (2) he was advised not to use this defense at trial, and (3) as a result, an innocent man went to jail for a crime that he committed. Based upon these court records, the Innocence Project letter suggested that Appellant pursue collateral relief.

On July 11, 2013, Appellant filed *pro se* his second PCRA petition. On August 6, 2013, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing. On August 27, 2013, it dismissed the petition. Appellant responded untimely to the court's Rule 907 notice on September 9, 2013. Nevertheless, Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued an opinion.

In July 2014, a divided panel of this Court vacated the PCRA Court's order and remanded for an evidentiary hearing. The Commonwealth filed a timely application for reargument *en banc*. We granted the Commonwealth's application and withdrew the July panel memorandum. **See** Order, 09/08/2014.

Appellant raises the following issues:

[1.] Whether the PCRA court erred in denying [Appellant's] post-conviction petition as untimely filed when [Appellant] established that his [after-discovered facts] claim[] [was] within the [plain language of the timeliness exception set forth at] 42 Pa.C.S.A. § 9545(b)(1)(ii) and section 9545(b)(2)?

[2.] Whether [Appellant] is entitled to a new trial, or remand for an evidentiary hearing based upon the personal documents of Melvin Goodwine['s] admitting that the petitioner did not participate in the crimes charged in this case, which [after-discovered fact] was provided to [Appellant] by Pennsylvania Innocence Project?

[3.] Whether the district attorney's [] failure to disclose exculpatory evidence to [Appellant] proving his innocence[] violates the prosecutor's obligation under the Fourteenth Amendment's Due Process Clause?

Appellant's Substitute Brief at v-vi.[1]

_____

[1] Before the original panel assigned to this case, Appellant specifically claimed both the government interference exception, **see** 42 Pa.C.S. § 9545(b)(1)(i), and the after-discovered facts exception, **see** 42 Pa.C.S. § 9545(b)(1)(ii). Appellant's Original Brief at 10. Appellant's current argument fails to address the government interference exception. **See generally** Appellant's Substitute Brief. Thus, it appears that Appellant has abandoned this particular claim before the *en banc* panel, and we will not address it.

*(Footnote Continued Next Page)*

We review an order denying a collateral relief under the PCRA to determine whether evidence of record supports the findings of the PCRA court and whether its legal conclusions are free of error. **Commonwealth v. Mitchell**, 105 A.3d 1257, 1265 (Pa. 2014). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Id.** (quoting **Commonwealth v. Roney**, 79 A.3d 595, 603 (2013)).

In this case, the PCRA court dismissed Appellant's petition without a hearing. **See** PCRA Court Order, 08/27/2013, at 1 (citing in support Pa.R.Crim.P. 907). There is no absolute right to an evidentiary hearing. **See Commonwealth v. Springer**, 961 A.2d 1262, 1264 (Pa. Super. 2008). On appeal, we examine the issues raised in light of the record "to determine whether the PCRA court erred in concluding that there were no genuine

_(Footnote Continued)_ _____

In his second and third issues, Appellant asserts substantive claims for collateral relief, claiming newly discovered, exculpatory evidence, improperly withheld by the district attorney's office. **See** Appellant's Substitute Brief at 4-10. In light of our disposition, and the procedural posture of this case, we do not reach these claims. **See Commonwealth v. Abu-Jamal**, 941 A.2d 1263, 1268 (Pa. 2008) (recognizing potential congruence between a **Brady** claim and Section 9545(b)(1)(i), but noting their distinct requirements); **see also Commonwealth v. Bennett**, 930 A.2d 1264, 1271-72 (Pa. 2007) (admonishing this Court to avoid imparting substantive requirements on the analysis of timeliness exceptions).

issues of material fact and in denying relief without an evidentiary hearing."

*Id.*

Under the PCRA, all petitions seeking collateral relief must be filed within one year of the date the judgment of sentence becomes final. **See Bennett**, 930 A.2d at 1267; 42 Pa.C.S. § 9545(b)(1). There are three statutory exceptions:

> **(b) Time for filing petition.--**
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
>> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>>
>> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>>
>> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant's judgment of sentence became final on November 13, 1997, ninety days after the Pennsylvania Supreme Court denied Appellant's

petition for allowance of appeal. **See** 42 Pa.C.S. § 9545(b)(3) (providing that judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); U.S.Sup.Ct.R. 13 (requiring the filing of a petition for writ of *certiorari* within 90 days) (effective May 1, 1997). Appellant had until November 13, 1998, to file a timely PCRA petition. Thus, his July 2013 petition was patently untimely.

Appellant acknowledges that his petition was untimely but asserts that he qualifies for the "after-discovered facts" exception to the timeliness requirement. In order to qualify, a petitioner must establish that (1) he did not know the facts upon which he based his petition, and (2) he could not have learned those facts earlier with the exercise of due diligence. **See** 42 Pa.C.S. § 9545(b)(1)(ii). According to Appellant, his reliance upon the contents of Goodwine's motion to expunge meets these requirements. We agree.

Fundamentally, at issue here is the appropriate level of diligence required of an untimely PCRA petitioner. Section (b)(1)(ii) requires "due diligence," without explanation or definition of the term. This omission poses little difficulty, however, as Pennsylvania courts have interpreted consistently the concept of due diligence in different contexts.

In 1893, for example, reviewing a financial dispute in which the plaintiff failed to collect on a note past due for seven months, the Pennsylvania Supreme Court affirmed a lower court ruling, leaving the

question of due diligence to the fact finder. *Tissue v. Hanna*, 27 A. 1104, 1105 (Pa. 1893). The Court noted the following:

> A contract [of guaranty] creates only a contingent liability; and it becomes absolute only by due and unsuccessful diligence to obtain satisfaction from the principal, or by circumstances that excuse diligence. … *But every case is to be judged by its circumstances.*

*Id.* (emphasis added).

More recently, this Court evaluated the efforts of police officers attempting to locate and apprehend a criminal defendant for speedy trial purposes. *Commonwealth v. Hinton*, 409 A.2d 54, 57 (Pa. Super. 1979). We concluded:

> It seems clear that the test [for due diligence] is *not* a venture into hindsight reasoning …. The matter of availability and due diligence must be judged by what *was* done by the authorities rather than what was not done. *The standard of due diligence demands only reasonable efforts.*

*Id.* (some emphasis added).

In the specific context of the PCRA, our state appellate courts have been more circumspect. Apart from citing the statutory language itself, no published decision provided an expositive statement of the diligence required to satisfy Section 9545(b)(1)(ii) until *Commonwealth v. Williams*, 35 A.3d 44 (Pa. Super. 2011). In *Williams*, this Court rejected a petitioner's attempt to embed a request for DNA testing in an untimely PCRA petition and clarified that "[d]ue diligence demands that the petitioner take *reasonable steps* to protect his own interests." *Id.* at 53 (citing

*Commonwealth v. Carr*, 768 A.2d 1164, 1168 (Pa. Super. 2001))
(emphasis added).[2]

Thereafter, we offered further guidance in *Commonwealth v. Davis*,
86 A.3d 883 (Pa. Super. 2014). In *Davis*, a jury convicted the petitioner of
robbery and first-degree murder in 1972, based in part on the testimony of
two witnesses. *Id.* at 885-86. Decades later, in 2008, the petitioner filed a
PCRA petition, in which he claimed to have discovered facts establishing that
both witnesses had testified pursuant to an undisclosed agreement with the
Commonwealth and that one of the witnesses had committed perjury. *Id.*
at 886. Notably, during the petitioner's trial, both witnesses had denied any
such agreement. *Id.* at 885-86.

The PCRA court denied relief, holding that the petitioner's facts were
publicly available in several court transcripts "via an exercise of due
diligence," and therefore, did not satisfy the requirements of Section
9545(b)(1)(ii). *Id.* at 889 (quoting the PCRA court opinion). This Court
disagreed. We observed that the petitioner's efforts were triggered upon
receipt of affidavits signed by one of the witnesses. *Id.* Regarding the
undisclosed agreements with the Commonwealth, we reasoned as follows:

> At no point during the testimony of either witness did the
> Commonwealth interject to clarify that a deal or leniency was

_____

[2] In *Carr*, we did not define expressly the requirements of due diligence but
rather examined the facts surrounding the appellant's efforts to pursue relief
and concluded the efforts were insufficient. *See Carr*, 768 A.2d at 1168.

offered to either[.] Therefore, [petitioner] had no reason to seek out transcripts of those witnesses' sentencing hearings in unrelated cases to look for evidence of such deals. To conclude otherwise would suggest that [petitioner] should have assumed the Commonwealth's witnesses were committing perjury, and the Commonwealth was improperly permitting them to do so. Due diligence does not require a defendant to make such unreasonable assumptions. *See Commonwealth v. Selenski*, 606 Pa. 51, 994 A.2d 1083, 1089 (2010) (defining the due diligence required by the Commonwealth in Pa.R.Crim.P. 600 issues as "*fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care*, but merely a showing that the Commonwealth has put forth a reasonable effort").

Instead, [petitioner's] efforts were adequately diligent under the circumstances of this case.

*Id.* at 890-91 (emphasis added).

We also addressed the petitioner's investigation into the allegedly perjured testimony. The source of this fact was limited to one of the affidavits received by the petitioner. *Id.* at 889. In it, the affiant stated that he had revealed his perjury to a trial court in an unrelated case. The transcripts from this unrelated case were unavailable. *Id.* at 890. Nevertheless, the PCRA court determined that the previous, public disclosure of this perjury precluded petitioner from relying on it. *Id.* Again, we disagreed, concluding that the petitioner acted with "sufficient diligence" and holding that "[i]t would be *unreasonable* to expect a *pro se* prisoner such as [petitioner] to do that which a trial court could not [*i.e.*, locate the transcript]." *Id.* at 891 (emphasis added).

Key in **Davis** was the petitioner's receipt of an affidavit informing him that at least one of the witnesses against him had secretly secured a sentencing agreement with the Commonwealth in exchange for his testimony. The affidavit served to trigger the petitioner's investigation. This particular circumstance was significant because the facts underlying the petitioner's claim were contained in a different or unrelated case. As we concluded, absent this trigger, "[petitioner] had no reason to seek out" facts in support of a claim for collateral relief. **Id.** at 890. Of course, there were additional factors, consistently relevant to any due diligence analysis, including the timing of the availability of the new facts and petitioner's *pro se* status. **Id.** at 891.

Finally, in **Commonwealth v. Medina**, 92 A.3d 1210 (Pa. Super. 2014) (*en banc*), the petitioner was convicted of murder in 1992, based on the testimony of two brothers, children at the time. **Id.** at 1213. In 2006, one of the witnesses recanted and claimed that a detective had coerced his testimony. **Id.** at 1216-17. Based on this recantation, the petitioner sought collateral relief. Following an evidentiary hearing, the PCRA court found the testimony of the petitioner and the witness credible and concluded that the

petitioner had established the after-discovered facts exception. *Id.* at 1216.[3]

On appeal, the Commonwealth argued that the petitioner's complete failure to contact the witness during the fifteen-year period following his arrest was insufficient to establish due diligence. *Id.* We disagreed:

> [The petitioner] had no way of knowing what the detective said to the Commonwealth's key child witnesses or that his threats were the reason the boys lied at trial. In addition, reasonable investigation could not have revealed it since even at the PCRA evidentiary hearing the Commonwealth's prosecutors claimed they had not known of the detective's conduct. If the Commonwealth's prosecutors did not know, [the petitioner] and his counsel had no reason to look for this evidence and probably could not have found it if they had.

*Id.* (adopting the analysis of the PCRA court). Thus, we concluded that the petitioner's efforts were *reasonable* under the circumstances. *Id.* at 1217.

There can be no reasonable dispute that the due diligence inquiry is fact-sensitive and dependent upon the circumstances presented.[4] Moreover,

_____

[3] The credibility determination of the PCRA court was essential to our subsequent affirmance. *Id.* at 1214 ("The PCRA court's credibility determinations, when supported by the record, are *binding* on this Court.") (emphasis added) (quoting **Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011)).

[4] Incidentally, Black's Law Dictionary defines due diligence in the following manner:

> Such a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a *reasonable* and prudent man under the *particular circumstances*; not measured by any

*(Footnote Continued Next Page)*

although the Pennsylvania Supreme Court has yet to adopt expressly the *Selenski* definition of due diligence, applied in *Davis*, in the context of the PCRA, the Court has done so implicitly. *See Commonwealth v. Edmiston*, 65 A.3d 339, 348 (Pa. 2013) (quoting *Selenski* in the context of the appellant's argument, but ultimately rejecting a second PCRA petition as untimely, concluding that certain photographic evidence at issue was available at the time of trial). Thus, we hold that due diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief. *Selenski*; *Medina*; *Davis*; *Williams*.

We shall strictly enforce this requirement. *See, e.g.*, *Commonwealth v. Fahy*, 959 A.2d 312, 315 (Pa. 2008). Our enforcement is a function of both the current, jurisdictional understanding of the PCRA timeliness requirement and the mandatory language of Section 9545(b)(1). *See Commonwealth v. Peterkin*, 722 A.2d 638, 641 (Pa. 1999) (baldly asserting that the PCRA timeliness requirements are "a matter of

*(Footnote Continued)* ────────────────────

absolute standard, but depending on the relative facts of the special case.

THE LAW DICTIONARY, FEATURING BLACK'S LAW DICTIONARY FREE ONLINE LEGAL DICTIONARY (2d ed.), http://thelawdictionary.org/due-diligence (last visited Apr. 23, 2015) (emphasis in original).

jurisdiction"); *see also* 42 Pa.C.S. § 9545(b)(1) ("Any petition under this subchapter … *shall be filed* within one year ...") (emphasis added).[5] Nevertheless, strict enforcement does not elevate the level of diligence required of a petitioner but merely describes the vigorous manner of judicial review.

Also relevant to our disposition is the nature of the after-discovered facts relied upon by Appellant. Appellant claims that he is innocent of murder and conspiracy, citing in support the contents of a motion to expunge criminal record filed by Appellant's co-defendant, Melvin Goodwine, in July 2009. At first glance it would appear that Appellant's claim runs afoul of Pennsylvania Supreme Court precedent holding that publicly available information cannot predicate a timeliness exception, beyond the 60-day grace period defined in Section 9545(b)(2). ***See, e.g., Commonwealth v.***

_____

[5] The jurisdictional interpretation of the timeliness requirement is long-standing. However, it is not without controversy. ***See, e.g., Commonwealth v. Brown***, 943 A.2d 264, 272-73 (Pa. 2008) (Baer, J., dissenting) (suggesting that this interpretation sacrifices "fundamental rights at the altar of finality"). Moreover, this Court has not always held to the "strict enforcement" standard when the jurisdiction afforded us by the PCRA is at issue. For example, it is well settled that the prisoner mailbox rule applies to PCRA petitions. ***See, e.g., Commonwealth v. Chambers***, 35 A.3d 34, 39-40 (Pa. Super. 2011) (applying the "prisoner mailbox rule" to a PCRA petition); ***Commonwealth v. Hopfer***, 965 A.2d 270, 272 n.2 (Pa. Super. 2009) (same); ***Commonwealth v. Little***, 716 A.2d 1287, 1288 (Pa. Super. 1998) (same).

*Taylor*, 67 A.3d 1245, 1248 (Pa. 2013) ("This Court has found matters of public record are not unknown.").[6]

However, the rule is not absolute. It must adhere to the statutory language of Section 9545. The requirement is that Section 9545(b)(1)(ii) facts are "unknown *to the petitioner*." 42 Pa.C.S. § 9545(b)(1)(ii) (emphasis added). This imparts a subjective element into the due diligence standard, easily accommodated by a reasonableness analysis, but not accurately reflected by a bright line rule. An irrebuttable presumption that public information cannot be "unknown" would disregard the standard of diligence required of untimely petitioners.

The general rule is reasonable when we may conclude that the petitioner retains access to public information, such as when a petitioner is represented by counsel. *See, e.g., Taylor*, 67 A.3d at 1247 (stating that each of the petitioner's three petitions for collateral relief were prepared by counsel); *Chester*, 895 A.2d at 522 (stating that petitioner was represented by counsel during pendency of his second petition); *Commonwealth v.*

_____

[6] *See also Commonwealth v. Chester*, 895 A.2d 520, 523 (Pa. 2006) (rejecting as untimely a counseled PCRA petition alleging trial counsel conflict of interest when counsel was arrested for driving under the influence within days of making his appearance on behalf of petitioner); *Commonwealth v. Lark*, 746 A.2d 585, 588 n.4 (Pa. 2000) (suggesting in *dicta* that certain statistics underpinning a study critical of the Philadelphia criminal justice system "were of public record [prior to petitioner's first, counseled PCRA petition] and cannot be said to have been 'unknown' to [the] [a]ppellant").

*Whitney*, 817 A.2d 423, 424 (Pa. 2003) (noting that petitioner had the benefit of counsel). In such cases, public records should be presumptively knowable. However, a *pro se* petitioner does not have access to information otherwise readily available to the public. That is elementary: A PCRA petitioner is most often incarcerated, and thus, no longer a member of the public. *See* 42 Pa.C.S. § 9543(a)(1). Without counsel's providing a conduit to publicly available information, a presumption of access is cynical, and the strength of the general rule falters. Thus, the Supreme Court has expressly recognized the importance of *access* to the public information.

Recall in *Bennett*, a petitioner was denied collateral relief. *Bennett*, 930 A.2d at 1266. The petitioner timely appealed, but appointed PCRA counsel failed to file a brief, and the appeal was dismissed by court order. *Id.* Thereafter, upon discovering counsel's abandonment, the petitioner *pro se* filed a second petition. *Id.* The PCRA court granted relief, reinstating the petitioner's appellate rights *nunc pro tunc*. *Id.* at 1267. This Court quashed the petitioner's appeal, concluding that the second petition was untimely. *Id.* The Supreme Court disagreed, concluding that counsel's abandonment of the petitioner was a fact, unknown to the petitioner, despite its presence in the public record (*i.e.*, the court order dismissing the petitioner's appeal was a matter of public record). *Id.* at 1275.

Addressing the public records rule, the Supreme Court reasoned as follows:

While the dissenting opinion [advocating strict application of the public records rule] is attractive in its simplicity, it does not give due consideration to the circumstances the instant case raises. The August 14th order [dismissing the petitioner's first PCRA appeal] was a matter of "public record" only in the broadest sense. Such orders are not sent directly to the prisoner. Rather, counsel is sent the notice on the assumption that counsel will inform his client of the court's action. In a case such as the instant one, it is illogical to believe that a counsel that abandons his or her client for a requested appeal will inform his client that his case has been dismissed because of his own failures. More importantly, in light of the fact that counsel abandoned Appellant, we know of no other way in which a prisoner could access the "public record."[13] Rather, we believe this situation is sufficiently distinct from the situation in **Chester** [**see** supra], since in this case, *the matter of "public record" does not appear to have been within Appellant's access.*[14]

_____

[13] Of course, the PCRA court can examine this matter on remand.

[14] **Chester** involved a "public record" extant at the time of trial during which counsel was actively representing his client. Clearly, that is distinct from a situation in which counsel has abandoned his client and yet counsel is the only way the client would have to access the information.

_____

**Bennett**, 930 A.2d at 1266 (emphasis added).

Viewing our analysis in **Davis**, *supra*, through the lens of **Bennett**, the contours of an "access" exception to the public records rule come into better focus. If our Supreme Court has recognized expressly that, without the benefit of counsel, we cannot presume a petitioner has access to information contained in his own public, criminal docket, then surely it cannot be that we presume a *pro se* petitioner's access to public information contained elsewhere. Thus, we hold that the presumption of access to information

available in the public domain does not apply where the untimely PCRA petitioner is *pro se*.

Applying the law in this case, and without the benefit of an evidentiary record developed below, Appellant's diligence may be sufficient. After receiving a letter from the Innocence Project, advising him of the contents of Goodwine's motion to expunge, Appellant promptly filed a PCRA petition. Similar to the affidavit significant to our ruling in **Davis**, here the letter received by Appellant triggered his claim for collateral relief.

The timing of Goodwine's motion is also important, as it occurred more than ten years after Appellant's judgment of sentence became final. The law does not require hyper-diligence, in which would-be petitioners incessantly scour the entirety of the public domain – that would be a Sisyphean task, neither realistic nor reasonable. After such an extended period, it would not be reasonable to expect Appellant to investigate public records with sufficient regularity to ascertain quickly whether Goodwine may have disclosed potentially exculpatory information concerning Appellant's case. In this regard, the contents of Goodwine's motion are informative. According to the motion, Goodwine was advised to forego a claim of self-defense at trial. Instead, he chose not to testify. Goodwine's silence at trial (and his acquittal of the murder charges) eliminated any reasonable expectation that he would, thereafter, publicly acknowledge his guilt. Thus, Appellant had no

reason to seek out facts in support of a claim for collateral relief. ***Medina***; ***Davis***.

Finally, Appellant is *pro se*. Accordingly, we will not *presume* he has access to public information. Absent evidence demonstrating Appellant's access to the contents of Goodwine's criminal docket, the public records rule does not apply.[7] ***Bennett***; ***Davis***.

In its opinion, the PCRA court suggested that it was unclear when Appellant really learned of Goodwine's filings, suggesting it did not find credible Appellant's assertion that, unsolicited, the Innocence Project approached Appellant in May 2013. ***See*** PCRA Court Opinion, 11/04/2013, at 5; Commonwealth's Substituted Brief at 19 n.14. The PCRA court cannot make a credibility finding in a vacuum. Similarly flawed is the PCRA court's suggestion that Appellant must have known previously that Goodwine murdered the victim, because Appellant was convicted also of conspiracy.

_____

[7] We reject the learned Dissent's suggestion that we have adopted a "status-based approach" to assessing due diligence. To be clear: An untimely petitioner's *pro se* status merely eliminates the presumption of his access to public information. The Commonwealth is free, of course, to adduce evidence sufficient to establish such access. When it does, a PCRA court can engage in a real, fact-based inquiry. A finding of access may well preclude a petitioner from invoking the after-discovered facts exception to the PCRA timeliness requirement (just as the general public records rule works where the petitioner is represented by counsel).

Further, we make no assumptions regarding Appellant's access to Goodwine's criminal docket. We merely reject the PCRA court's presumption of access and, more generally, establish a framework within which Appellant's diligence may be assessed properly.

*See* PCRA Court Opinion at 4-5. The court's reasoning is not persuasive in light of Appellant's claim of innocence regarding both murder and conspiracy. Without a factual record developed by the PCRA court, it is impossible to conclude whether Appellant previously knew such facts. Thus, these findings were premature. Nevertheless, the PCRA court may consider these issues further following an evidentiary hearing. *See, e.g.*, *Bennett*, 930 A.2d at 1275 n.13 (noting that the PCRA court is free to examine questions that may arise in the context of a due diligence inquiry).[8]

For the above reasons, we conclude that the PCRA court erred in rejecting Appellant's untimely petition pursuant to the public records rule. Moreover, based on the record before us, the Goodwine motion raises genuine issues of material fact that warrant development. *See Springer*, 961 A.2d at 1264. Accordingly, the order of the PCRA court is vacated, and this matter is remanded for an evidentiary hearing.

Order vacated. Case remanded. Jurisdiction relinquished.

Judges Ford Elliott, PJE, Panella, J., Donohue, J., Mundy, J. and Ott, J. join this Opinion.

Judge Olson files a dissenting opinion in which Gantman, P.J. and Shogan, J. join.

_____

[8] Generally, we observe that the PCRA court's timeliness analysis of Appellant's after-discovered facts exception is erroneous to the extent the court also conducted a merits analysis. *See* PCRA Court Opinion at 3-5; *Bennett*, 930 A.2d at 1270-72.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2015