J-S51022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CARLTON BENNETT | |
| Appellant | No. 253 EDA 2014 |

Appeal from the PCRA Order January 14, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0933202-1991

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 09, 2016**

Carlton Bennett appeals from the trial court's order dismissing his second petition, after several days of evidentiary hearings, filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.[1]  After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We review an order denying collateral relief under the PCRA to determine whether evidence of record supports the findings of the PCRA court and whether its legal conclusions are free of error.  **Commonwealth v. Mitchell**, 105 A.3d 1257, 1265 (Pa. 2014).  "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Id.** (citation omitted).  Additionally, courts "will not entertain a second or subsequent request for PCRA relief unless the petitioner makes a strong prima facie showing" that the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred "or that that he was innocent of the crimes for which he was charged."  **Commonwealth v.**
*(Footnote Continued Next Page)*

Bennett was involved in the fatal shooting of a matriculated University of Pennsylvania medical student in August 1991. Following the murder, Bennett confessed to the police that he and his co-conspirators had agreed to commit a robbery[2] and that he was a couple of steps away from Dwayne Bennett, his cousin, when Dwayne fatally shot the victim.[3]

In January 1993, Bennett was convicted of second-degree murder and related offenses. Our Court set forth the relevant facts underlying the case as follows:

> Six men, including appellant, were wandering around the streets of Philadelphia in the early morning hours of August 9, 1991. Shortly after 5:00 a.m., the group came upon the victim, Roberts Janke, a recent college graduate about to matriculate at the University of Pennsylvania School of Medicine, in a telephone booth at the corner of 17th and South Streets. Three of the men walked ahead, while the other three, appellant[,] Dwayne Bennett, and Giovanni Reed, lagged behind. Appellant and Reed each grabbed an arm and Dwayne held Janke by the neck. They strong-armed the victim down the street and pushed him up against a metal gate. Dwayne held a gun to Janke's temple, demanded his money, and began looking through his pockets. Dissatisfied with the amount of money Janke produced, Dwayne fired the gun. Janke slumped to the ground and the three men fled.
>
> Dwayne Bennett pled guilty to first-degree murder, and appellant and Re[i]d were tried before a jury in January, 1993.

*(Footnote Continued)* —————————

***Medina***, 92 A.3d 1210, 1214-15 (Pa. Super. 2014) (en banc) (citations omitted).

[2] The perpetrators recovered $5 from the victim.

[3] ***See*** Statement of Carlton Bennett (Investigation Interview Record), 8/17/91, at 1-3.

*Commonwealth v. Bennett*, 02276 Philadelphia 1993 (memorandum decision) (Pa. Super. filed 2/17/94), at 1-2.

On June 23, 1993, Bennett was sentenced to life in prison for murder.[4] Post-verdict motions were denied and Bennett's judgment of sentence was affirmed by this Court in February 1994. *Commonwealth v. Bennett*, 643 A.2d 701 (Pa. Super. filed Feb. 17, 1994). Bennett did not file a petition for allowance of appeal. However, on March 17, 1995, Bennett filed his first PCRA petition alleging violations of his right to testify and several claims of ineffectiveness of counsel. The court denied his petition on April 10, 1997, after an evidentiary hearing.

Bennett appealed that decision and our Court dismissed his appeal for failure to file a brief. In July 1997, Bennett filed a serial PCRA petition, claiming that counsel was ineffective for failing to file a brief following the notice of appeal from the denial of Bennett's first PCRA petition and that he was entitled to file an appeal *nunc pro tunc*. Counsel was appointed to represent Bennett and an amended petition was filed on his behalf. Ultimately, the trial court denied the petition in June 1998. In February 2000, Bennett filed a motion for reappointment of counsel which the trial court treated as a third PCRA petition; the petition was ultimately denied.

---

[4] Bennett was also sentenced to concurrent terms of 10-20 years in prison for robbery, 5-10 years' imprisonment for conspiracy and 1-2 years in prison for possessing an instrument of crime.

Bennett appealed that decision and, on May 29, 2001, our Court reversed and remanded the petition for appointment of new counsel. On remand, the trial court granted Bennett's petition for the limited purpose of a *nunc pro tunc* appeal. On May 15, 2002, our Court remanded the case to the trial court, permitting current appellate counsel the opportunity to develop Bennett's claims with the benefit of necessary files in the possession of Bennett's prior counsel. Bennett appealed and, on August 28, 2003, our Court affirmed the dismissal of Bennett's first petition. ***Commonwealth v. Bennett***, 1290 EDA 2000 (Pa. Super. filed Aug. 28, 2003).

On April 25, 2006,[5] Bennett filed another petition[6] raising the issue of after-discovered evidence. Specifically, Bennett claimed that on March 13, 2006, he became aware of a new eyewitness to the murder, the victim's roommate, Wayne Richman. Bennett alleged that Richman made a statement to co-defendant's counsel in Tennessee, asserting that there was only one individual involved in the victim's shooting and that no one else was within 15-20 feet of the victim when he was shot by Dwayne Bennett. On January 24, 2007, the court dismissed the petition, without a hearing, as time-barred under the PCRA. Bennett appealed this decision, asking our Court to remand the case to present an additional claim of new evidence in

---

[5] Bennett's petition was amended on May 21, 2008, and supplemented on July 16, 2008.

[6] Bennett titled the petition as a brief in support of post-conviction relief.

the form of a statement made by the shooter, Dwayne Bennett, recanting his prior statements that his cousin, the Appellant, was an active participant in the crime.[7] Our Court entered an order granting Bennett's application for relief, ordering Bennett to file an amendment to his PCRA petition including information described in his application, remanding the case to the trial court for further proceedings in connection with Bennett's amended petition, and relinquishing jurisdiction.

At an evidentiary hearing on his after-discovered evidence claim, the Commonwealth permitted Richman to testify; Richman acknowledged that he was drunk and using cocaine when he allegedly saw the events in question from a distance of about three hundred feet. After hearing Richman's testimony, the trial judge[8] found his inconsistent accounts[9] incredible and denied PCRA relief. This appeal follows.

On appeal, Bennett presents the following issues for our consideration:

> (1) Did the court below err in assessing witness Wayne Richman's credibility when it did not weigh[] factors

---

[7] On appeal Bennett raises only the newly discovered facts with regard to Wayne Richman. He does not raise any claim with regard to the alleged recantation evidence of Dwayne Bennett.

[8] After the original PCRA judge's retirement from the bench, the case was reassigned to the Honorable Rose Marie DeFino-Nastasi.

[9] Richman gave four post-trial statements in the underlying murder case which the PCRA court found to be "contradictory, implausible and unduly influenced[.]" PCRA Court Opinion, 11/22/13, at 6. Moreover, the court found his accounts of the murder "rife with inconsistencies." *Id.* at 10.

bolstering his credibility, exaggerated evidence of defense coercion, and refused to hear testimony of law enforcement coercion?

(2) Did the court below apply incorrect legal standards in assessing the materiality of after-discovered evidence in (a) requiring that the evidence – credible or not – "exonerate" Appellant, (b) ruling that Richman's testimony was "solely impeachment" because it contradicted trial witnesses' testimony, (c) relying almost exclusively on credibility in assessing the Richman evidence's materiality, and (d) refusing to consider evidence favorable to Appellant which would be heard at a new trial though it was not presented at the first trial?

Before reaching the merits of Bennett's claims on appeal, we first must address the jurisdictional requirements of the PCRA. A PCRA petition, including a second or subsequent one like Bennett's, shall be filed within one year of the date the underlying judgment becomes final. *See* 42 Pa.C.S. § 9545(b)(1). Instantly, Bennett's judgment of sentence became final on March 17, 1994, the date that the time within which to file a petition for allowance of appeal with our Supreme Court expired. *See* Pa.R.A.P. 1113. His current PCRA petition was filed on April 25, 2006 – more than 12 years after his judgment of sentence became final. Accordingly, Bennett's PCRA petition is patently untimely.

In order to overcome the PCRA time bar, Bennett has invoked the newly-discovered evidence exception set forth in 42 Pa.C.S. § 9545(b)(1)(ii).[10] Under section 9545(b)(1)(ii), a petitioner must plead and

_____

[10] There are two other statutory exceptions to the timeliness provisions of the PCRA. *See* 42 Pa.C.S. § 9545(b)(1)(i) (governmental interference
*(Footnote Continued Next Page)*

prove that "the facts upon which the claim is predicated were unknown to [him] and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii).[11] When a patently untimely petition is not eligible for one of the three exceptions outlined in section 9545(b)(1), a PCRA court has no jurisdiction to address the substantive merits of the petitioner's claims. *Commonwealth v. Gamboa-Taylor*, 753 A.2d 780 (Pa. 2000).

With regard to Bennett's claim that the trial court applied an incorrect legal standard in assessing his claim, we note that our Court recently clarified the distinction between a newly-discovered facts exception under the PCRA and an after-discovered evidence claim:

> The timeliness exception set forth at *Section 9545(b)(1)(ii)* has often mistakenly been referred to as the "after-discovered evidence" exception. [*Commonwealth v.*] *Bennett*, [930 A.2d 1264, 1270 (Pa. 2007)]. "This shorthand reference was a misnomer, since the plain language of *subsection (b)(1)(ii)* does not require the petitioner to allege and prove a claim of 'after-discovered evidence.'" *Id.* Rather, as an initial jurisdictional threshold, *Section 9545(b)(1)(ii)* requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii); *Bennett*, *supra*. Once jurisdiction is

*(Footnote Continued)* ⸻

exception); *id.* at (b)(iii) (newly-recognized constitutional right exception). Neither of these exceptions is relevant to the current appeal as Bennett has not pled them.

[11] Additionally, in order to proffer an exception to the PCRA time-bar, a petitioner must prove that he presented the newly discovered evidence within 60 days of the date the claim could have been presented. *See* 42 Pa.C.S. § 9545(b)(2).

- 7 -

established, a PCRA petitioner can present a substantive after-discovered evidence claim. Thus, the "new facts" exception at *Section 9545(b)(1)(ii)* does not require any merits analysis of an underlying after-discovered-evidence claim. ***Id.*** [] at 1271.

***Commonwealth v. Brown***, 111 A.3d 171, 176-77 (Pa. Super. 2015) (italics in original).

Instantly, Bennett has pleaded that he was unaware of Richman's testimony and that it was not until he read the 2006 transcribed statement Richman made to La Tasha Williams of an audio recorded conversation that he discovered the new facts. This claim satisfies the first "unknown facts" prong of section 9545(b)(1)(ii).

With regard to the "due diligence" prong of section 9545(b)(1)(ii), Bennett asserts that "Richman was ruled out by police as having relevant information about the killing on the day that it occurred, when [Richman] gave a statement to the police indicating that he saw nothing of importance,"[12] and that he "simply had no reason to believe that this witness had any relevant information to provide and therefore he would not have discovered his information through the exercise of due diligence." Petitioner's Supplement to Amended PCRA Petition, 12/230/12, at 8-9.

_____

[12] Interestingly, in his February 6, 2006 email to Williams about the crime, Richman indicated that he had a little bit of information about co-defendant Reid's case and that "*the police never came by to question [him*.]" Email to Giovanni@giovannireid.com, 2/6/06 (emphasis added). Moreover, in the video-taped deposition Richman gave to Williams in March of 2006, he stated that *he did not remember giving the police a signed statement after the crime occurred*. Videotaped Deposition of Wayne Edward Richman, 3/13/06, at 13 (emphasis added).

However, the substance of Richman's signed statement to the police does not bear out these assertions.

Six hours after the shooting, Richman made a statement to the police in which he told them that he found out, after the fact, that he had been at the same party with the victim on the night of the murder, that he did not see the victim while they were at the party,[13] and that he came home (4 AM) before the victim that evening. Wayne Richman Statement to Police, 8/10/91, at 1. Richman informed the police that he worked with the victim at the TGI Friday's restaurant located at 22nd Street and the Benjamin Franklin Parkway, that he had been the victim's roommate for over one month, and that he and the victim had known each other for two months. *Id.* The detectives asked Richman if he knew how the victim arrived home on the night of the shooting, to which Richman relied, "no." *Id.* at 2. They also asked Richman if the victim usually carries money, a wallet or any jewelry with him when he is out; Richman replied, "money and a wallet with credit cards." *Id.*

Notably, nowhere in the statement do the detectives ask Richman if he witnessed the shooting or had any information about the shooting. This is supported by the trial court's acknowledgement in its Rule 1925(a) opinion

---

[13] In contrast to this statement, at the November 30, 2010 PCRA hearing, Richman testified that while he did not go to the party with the victim that evening, he *did* see the victim at the party. N.T. PCRA Hearing, 11/30/10, at 58.

that "Mr. Richman gave a statement to police during the initial investigation of this incident, *but was questioned merely as to his status as the victim's roommate*." Trial Court Opinion, 11/22/13, at 4 (emphasis added).

In *Commonwealth v. Burton*, 121 A.3d 1063 (Pa. Super. 2015) (en banc), our Court recently had the opportunity to clarify the due diligence prong for untimely PCRA petitions invoking section 9545(b)(1)(ii). In *Burton*, the defendant had been convicted of first-degree murder in the strangulation death of the victim in the Allegheny County jail. Burton's co-defendant was convicted of conspiracy, but acquitted of murder. Almost ten years after he was sentenced, Burton purportedly received a letter from the Pennsylvania Innocence Project which enclosed copies of a motion to expunge filed by his co-defendant, wherein the co-defendant alleged that he killed the victim in self-defense, had been advised not to use this defense at trial, and as a result "an innocent man went to jail for a crime that [the co-defendant] committed." *Id.* at 1066.

On appeal from the dismissal of his second PCRA petition, Burton acknowledged that his PCRA petition was untimely, however, he claimed that he had established that his after-discovered evidence claim fell within the PCRA's timeliness exception set forth at section 9545(b)(1)(ii). Our Court phrased the inquiry on appeal as what "is the appropriate level of diligence required of an untimely PCRA petitioner" under section 9545(b)(1)(ii). *Id.* at 1070. Citing to case law that analyzed the concept of due diligence, our Court noted that "[d]ue diligence demands that the petitioner take

*reasonable steps* to protect his own interests[.]" ***Id.*** (citations omitted). Ultimately, the ***Burton*** Court held "due diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." ***Id.*** at 1071.[14]

A due diligence inquiry is, undoubtedly, fact-sensitive and dependent upon the circumstances presented. ***Id.*** at 1070. Instantly, we do not find that Bennett has met the due diligence prong of section 9545(b)(1)(ii) where he failed to investigate Richman as a potential witness after the murder. Richman was the victim's roommate and co-worker at the time of the shooting, had been at the same party with the victim on the evening of the shooting, and was home when the shooting occurred down the block from their shared apartment.[15] ***Commonwealth v. Carr***, 768 A.2d 1164 (Pa. Super. 2001) (due diligence requires that petitioner take reasonable steps to protect own interests). Bennett knew where Richman lived and knew that

_____

[14] Although not relevant to our decision today, we note that in ***Burton***, our Court held that for purposes of a due diligence analysis, the presumption of access to information available in the public domain does not apply where an untimely PCRA petitioner is *pro se*.

[15] While Richman left the Philadelphia area in December 1991, he continued to reside in the same apartment he had shared with the victim for four months following the shooting. Richman also returned to and resided in Bucks County, a suburb of Philadelphia, for an additional three months from June 1992-September 1992.

the police had met with Richman immediately following the murder. Where the police investigation failed to reveal if Richman knew anything about the details of the murder or, whether he, himself, could have been involved in the crime, defense counsel's reasonable investigation of the witness could have uncovered the new facts earlier.

Having failed to explain why he could not have learned the "new" facts earlier with the exercise of due diligence, Bennett does not plead and prove the timeliness exception under section 9545(b)(1)(ii). *Cf. Commonwealth v. Medina*, 92 A.2d 1210 (Pa. Super. 2014) (defendant exercised due diligence under section 9545(b)(1)(ii) where he had no way of knowing that detective had allegedly coerced testimony of key murder witness which prompted witness to lie at trial and where Commonwealth's prosecutors claimed that even they did not know of detective's conduct); *Commonwealth v. Davis*, 86 A.3d 883, 891 (Pa. Super 2014) (where first-degree murder defendant filed PCRA petition alleging witnesses testified against him pursuant to undisclosed agreement with Commonwealth, our Court held petitioner exercised due diligence where it was unreasonable to expect *pro se* petitioner to locate transcript from unrelated case where witness's perjury revealed).

Because Bennett's petition is patently untimely and does not meet the newly-discovered facts exception pled in his petition, the PCRA court did not have jurisdiction to address the substantive merits of Bennett's after-

discovered evidence claim. ***Gamboa-Taylor***, ***supra***. Accordingly, the court properly dismissed the petition.[16]

Order affirmed.

---

[16] Even if we were to find no jurisdictional hurdle to deciding Bennett's untimely petition, he would fail on the substantive merits of his after-discovered evidence claim. In determining whether a petitioner is entitled to PCRA relief upon a claim of after-discovered evidence, it is the PCRA petitioner's burden to "[d]emonstrate [by a preponderance of the evidence] that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." ***Commonwealth v. Pagan***, 950 A.2d 270, 292 (Pa. 2008). In considering the prejudice prong of the after-discovered evidence test, courts are to look to "the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." ***Commonwealth v. Padillas***, 997 A.2d 356, 365 (Pa. Super. 2010).

Judge DeFino-Nastasi noted that Richman did not testify that he ever observed Bennett's actions prior to the shooting. Rather, Richman admitted to consuming 15 beers and several shots of whiskey on the night of the murder. In fact, when Richman returned home on the evening of the murder, he passed out from his alcohol consumption, and was unable to recall how he even got home that evening. In addition, he was an admitted cocaine addict who suffered from occasional blackouts. At the time of the murder, Richman had just awoken from a drunken stupor. The parties stipulated that Richman was standing approximately 295-297 feet from the site of the homicide when he heard the victim make a whimpering sound and heard an individual, standing approximately 10-20 feet from the victim, yell, "no" or "don't." Richman then proceeded to go back to his apartment and drink more alcohol. Richman never told anyone about his first-hand observations of the murder until 2006 – 15 years after the murder – after he read information on a website about the murder. Based on these facts, we are bound by the trial court's credibility assessment of Richman's testimony as it is supported by the record. ***See Commonwealth v. Williams***, 732 A.2d 1167, 1181 (Pa. 1999); ***see also Commonwealth v. Abu-Jamal***, 720 A.2d 79 (Pa 1988).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/9/2016