J-S54021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:                    PENNSYLVANIA
:
v.                              :
:
:
RAFAEL MUESES POPOTE            :
:
Appellant                  :       No. 1079 MDA 2020

Appeal from the PCRA Order Entered July 28, 2020
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0004731-2015

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: APRIL 1, 2021**

Rafael Mueses Popote appeals from the order denying his Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. Popote argues that the PCRA court erred in denying his claim that his trial counsel was ineffective for failing to call character witnesses. We affirm.

In 2015, Popote was arrested and charged with one count each of Corrupt Organizations and Conspiracy to Commit Corrupt Organizations, nineteen counts each of Dealing in Proceeds of Unlawful Activities, Criminal Use of a Communication Facility, Possession With Intent to Deliver a Controlled Substance, Possession of a Controlled Substance, and Conspiracy to Commit Possession of a Controlled Substance, and seven counts of

Conspiracy to Commit Possession With Intent to Deliver a Controlled Substance.[1]

The PCRA court summarized some of the evidence presented at trial:

> In January of 2015, the Reading Police Department became involved with a Pennsylvania State Police ("PSP") investigation into a large-scale narcotic trafficking operation in the area of Berks County and reaching into Schuylkill County. Initially, the investigation focused on an individual named Nelson Guzman, who the PSP were notified through confidential sources, was trafficking in methamphetamine in the Reading, Pennsylvania area through an organization. Through several controlled buys with Mr. Guzman, and information provided through confidential informants, investigators became aware that Mr. Guzman was dealing in a variety of narcotics, including methamphetamine, heroin, marijuana, and cocaine.
>
> Once enough information was compiled, investigators applied for a wiretap of Mr. Guzman's cell phone, which was approved. Through the wiretap, investigators discovered that another individual named Erick Nunez, was supplying cocaine to Mr. Guzman. Additional intercepts on Mr. Nunez's phone and subsequent surveillance led investigators to identify that Mr. Nunez was receiving cocaine from [Popote].
>
> As part of the investigation, law enforcement also received authorization to wiretap two cell phone numbers associated with [Popote]. One of the cell phones was registered to [Popote]. The other cell phone was registered to a default address for the prepaid cell phone company. However, investigators were able to link the second cell phone to [Popote] through recognition of his voice on other calls, internal conversation references, and through surveillance.
>
> During the course of the investigative operation, law enforcement intercepted between 8,000 and 11,000 voice calls and text messages throughout the organization. At the conclusion of the investigation, more than twenty

_____

[1] 18 Pa.C.S.A. §§ 911(b)(1), 911(b)(4), 5111(a)(1), and 7512(a),  35 P.S. § 780-113(a)(30) and 780-113(a)(16), and 18 Pa.C.S.A. § 903(a)(1).

> individuals involved in the drug trafficking organization were arrested and charged.

Trial Court Opinion, filed July 27, 2020, at 1-2.

At trial "along with testimony of the above-mentioned facts," the Commonwealth entered into evidence "eleven recordings . . . of intercepted phone calls in which [Popote] was allegedly a participant, implicating his involvement in the narcotics trafficking organization." *Id.* at 2. Further, "[t]he Commonwealth . . . called two of [Popote's] co-defendants in the organization who testified as to [Popote's] involvement and identified [Popote's] voice on the recorded evidence." *Id.*

In February 2017, the jury convicted Popote of the above-listed offenses. The trial court sentenced Popote to 26 to 55 years' incarceration, followed by 22 years of supervised probation. Popote filed a timely post sentence motion, which the trial court denied. Popote appealed, and, in November 2018, this Court affirmed the judgment of sentence. Popote did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

In August 2019, Popote filed a counseled PCRA petition, alleging his trial counsel was ineffective for failing to call character witnesses. The PCRA court held a hearing.

Popote presented the testimony of his girlfriend, Paola Montanez, who testified that she has known Popote for ten years and has known Popote's reputation in the community to be that of an excellent citizen. N.T., 3/10/20, at 6-7. Montanez stated that if she had been called to testify at trial, her testimony would have been similar to that given at the PCRA hearing. *Id.* at

7. On cross examination, Montanez testified that she did speak with Popote over the phone and knew what his voice sounded like on the phone. *Id.* at 8.

Popote then entered into evidence a stipulation in which the parties agreed that the eleven witnesses that were present at the evidentiary hearing were ready and willing to testify and that each individual's testimony would be consistent with that of Montanez as to Popote's reputation and their availability to testify at trial. *Id.* at 10-11.

Trial counsel testified that, for Popote's trial, he reviewed the Commonwealth's evidence, the bulk of which was wiretap recordings, including the phone calls that were alleged to implicate Popote. *Id.* at 12. Counsel determined that because the Commonwealth could not present an exemplar of Popote's voice, and did not have scientific evidence to demonstrate that it was Popote's voice on the recordings, the best course of action would be to deny that Popote's voice was on the phone calls. *Id.* at 13. Counsel recommended that Popote retain an audiology expert, but this strategy was too expensive, and the decision was made to move forward with the strategy, without the expert. *Id.*

Counsel also said he considered calling character witnesses but rejected the idea and did not discuss it with Popote because character witnesses would be subject to questions on cross-examination about whether they recognized Popote's voice on the wiretap recordings. *Id.* at 14-15. Counsel noted that the Commonwealth had recordings of phone calls between Popote and Montanez from when Popote was in prison on the basis of which Montanez could identify

Popote's voice. *Id.* at 15. Counsel further testified that the extent of Commonwealth's evidence indicated that the case was more than a mere credibility dispute in which character testimony might be helpful. *Id.* at 15.

On cross-examination, counsel acknowledged that he was aware that Popote had no prior criminal record and that he could call character witnesses to testify on Popote's behalf, which might present Popote to the jury in a better light. *Id.* at 16-17. He further acknowledged that in some cases character testimony may create reasonable doubt and such testimony would be accompanied by an instruction from the court to that effect. *Id.* at 17. Counsel also admitted that he did not review the recorded phone call evidence with potential character witnesses to determine whether the witnesses could identify Popote's voice on the phone calls. *Id.* at 19-21. Counsel explained that he felt that the benefits of calling character witnesses were outweighed by the risk that the witnesses could be asked to identify Popote's voice on the recorded evidence. *Id.* at 22.

The PCRA court denied the petition, and Popote appealed.[2] He raises the following issue: "Whether the [PCRA] court erred in denying [Popote's] [PCRA] petition where trial counsel was ineffective for failing to present character witnesses?" Popote's Br. at 5.

---

[2] On August 11, 2020, Popote filed a *pro se* appeal, which this Court docketed at 1044 MDA 2020. On August 13, 2020, Popote's counsel filed a notice of appeal of the same PCRA order, which is the instant appeal. In September 2020, counsel filed a motion to withdraw the *pro se* appeal, which we granted, because the *pro se* appeal was duplicative of the instant appeal.

On appeal from the denial of PCRA relief, our task is to determine "whether evidence of record supports the findings of the PCRA court and whether its legal conclusions are free of error." ***Commonwealth v. Burton***, 121 A.3d 1063, 1067 (Pa.Super. 2015) (*en banc*).

Courts presume that counsel is effective. ***Commonwealth v. Daniels***, 963 A.2d 409, 427 (Pa. 2009). To overcome this presumption, a petitioner must establish three things: (1) the underlying claim has arguable merit, (2) counsel had no reasonable strategic basis for his or her action or inaction, and (3) the petitioner has been prejudiced by counsel's error. ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007). "[W]here matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." ***Commonwealth v. Puksar***, 951 A.2d 267, 277 (Pa. 2008) (quoting ***Commonwealth v. Miller***, 819 A.2d 504, 517 (Pa. 2002)). Prejudice is established where the appellant shows that "but for the act or omission in question, the proceeding's outcome would have been different." ***Commonwealth v. Small***, 980 A.2d 549, 559 (Pa. 2009).

Popote argues that the proposed character witnesses were ready, willing, and able to testify at trial. He claims that if they had testified, the jury would have heard positive testimony about him, and the court would have given a jury instruction that character evidence alone may raise a reasonable doubt. Popote's Br. at 11. He further claims the decision to not present character testimony was not based on a reasonable trial strategy, noting

counsel did not discuss with Popote the possibility of calling witnesses, and that counsel did not ask the witnesses to listen to the tapes to determine whether they knew if the voice on the tape was Popote's voice. Popote further claims the Commonwealth would not have asked, or would not have been permitted to ask, whether the witnesses recognized the voice. He claims the testimony would have impacted the outcome of trial, because, if counsel had presented the testimony, the jury would have had this "critical information and a jury instruction from the judge that could have resulted in a not guilty verdict." *Id.* at 13.

The PCRA court concluded that Popote did not satisfy his burden of showing his counsel was ineffective. It concluded the testimony and affidavits did not establish the witnesses were available at the time of trial, and that Popote did not present evidence that counsel knew or should have known of the witnesses. Trial Ct. Op. at 8. It further found that Popote failed to demonstrate that counsel's decision lacked a reasonable basis or that he suffered prejudice because counsel did not call character witnesses. *Id.* The court reasoned:

> [Counsel] testified at the PCRA hearing that he had observed tactics used in earlier related cases and decided that the best strategy would be a denial that [Popote] was the individual whose voice was presented on the recorded evidence. [Counsel] cited the fact that the bulk of the evidence on the case was wiretap recordings, but that there was no scientific evidence linking [Popote] to the voice recordings, the Commonwealth presented no exemplars of [Popote's] voice, and the only testimony regarding identification of the voice on the recordings was that of

police officers. [Counsel] discussed the strategy with [Popote] and [] Montanez and suggested that they hire an audiology expert, but that the cost was too prohibitive. Furthermore, at trial, [counsel] repeatedly cross-examined the Commonwealth's witnesses as to the identification of [Popote's] voice on the recordings. [Counsel] then stated that he did not want to present any character witnesses as such a decision may have exposed those witnesses to identification of [Popote's] voice on the recordings on cross-examination by the Commonwealth.

[Popote] claims that [counsel's] fear regarding the scope of cross examination of the character witnesses is misplaced and that his caution amounts to ineffective representation since he could have requested that the scope of cross-examination be limited. However, we find this argument unconvincing in two aspects. First, we fail to see how such a motion seeking to limit the scope of cross-examination would have been successful in proscribing the Commonwealth from questions regarding the witnesses' knowledge or identification of [Popote's] voice. "The scope of cross examination is a matter within the trial court's discretion." *Commonwealth v. Hoover*, 16 A.3d 1148, 1150 (Pa.Super. 2011). Certainly, the Commonwealth would be prohibited from cross-examining [Popote's] character witnesses regarding any uncharged criminal allegations or even past behavior leading to an arrest but not a conviction. Nevertheless, the Commonwealth is not so restrained in cross-examination to attack the credibility of the character witness, either in the accuracy of their testimony or the standard by which they measure reputation. *Commonwealth v. Morgan*, 739 A.2d 1033, 1036 (Pa. 1999). As noted, "the actual purpose of the cross-examination [of a character witness] is not to show commission by the defendant of a specific crime of which he or she is not now accused." *Adams*, 626 A.2d at 1233 (emphasis added). Meanwhile, the purpose of the trial is a determination of guilt of the defendant as to the charges brought by the Commonwealth in the matter at hand. Therefore, it is logical that the Commonwealth, in testing the credibility of a witness who is presenting character evidence of a defendant as to a pertinent trait, would be within permissible bounds to examine whether the witness' knowledge of the defendant is consistent with the charges

brought forth instantly. The caution with which [counsel] proceeded was to avoid the possibility that the Commonwealth could cross-examine a character witness regarding the identification of [Popote's] voice in relation to the charges brought forth in this action. We see no reason why the Commonwealth would have been constrained from such an inquiry as it could relate directly to the witness' credibility.

Second, we find [Popote's] assertion that it would be unlikely for the Commonwealth to engage in such questioning without assurance of a positive identification from the character witness. We reject this argument because it wholly relies on speculation of the Commonwealth's trial strategy, and the underlying theory is inconsistent with the Commonwealth's presentation of testimony and evidence at trial. It is clear from our review of the notes of testimony that the Commonwealth relied not on specified expert testimony regarding the voice identification, but on the combination of law enforcement observation, conversations that individuals law enforcement officers had with [Popote], and to internal references within the recorded conversations to link the voice on the phone calls to [Popote].

As such, we find that [counsel's] strategy to avoid the possibility of reinforcing the evidence is well-founded and consistent with his trial strategy to call into question the link between [Popote] and the voice identified by law enforcement through the testimony and evidence. Whether there existed an alternative strategy is not sufficient to support a claim of ineffective assistance. "[W]e do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011). Moreover, "[w]e will conclude that counsel's chosen strategy lacked a reasonable basis only if [Popote] proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.* We find that [Popote] did not prove that presenting character witnesses at his trial would have offered such a potential for success.

Finally, we find that [Popote] failed to demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different had [counsel] presented the character witnesses presented at the PCRA hearing. Given the evidence presented by the Commonwealth at trial, the case did not teeter on the issue of credibility. Instead, audio and visual evidence was presented to the jury, along with law enforcement testimony regarding the extent of the investigation and the organization of which the Commonwealth alleged [Popote] took part. Additionally, two of [Popote's] co-defendants testified that they participated in illegal activities with [Popote] and identified [Popote's] voice on the recorded phone calls. Nonetheless, our decision does not hinge solely on the breadth of the Commonwealth's evidence presented at trial, but also on the testimony as presented both at the hearing and in the affidavits attached to the petition, which we find lacks sufficiency to support the claim.

*Id.* at 10-13.

The record supports the PCRA court's findings and it did not err in denying Popote's claim that his counsel was ineffective. The evidence did not prove the witnesses were available at the time of trial or that counsel knew, or should have known of their existence. Further, Counsel had a reasonable basis for not calling character witnesses and Popote failed to prove prejudice, because, even if counsel had called witnesses, the outcome of the proceeding would not have been different.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/01/2021