J-S74034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FELIPE DELVALLE | : | |
| | : | |
| Appellant | : | No. 3188 EDA 2016 |

Appeal from the PCRA Order September 22, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012099-2008

BEFORE:  BOWES, J., LAZARUS, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                      **FILED MARCH 12, 2018**

Appellant, Felipe Delvalle, appeals from the order dismissing his first petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  His petition related to his convictions for the murder of Antonio "Tone" Otero and for carrying a firearm without a license.[1]  We affirm.

On October 25, 2007, Officer Bryan Howell went to 2815 North Front Street in Philadelphia for a report of a shooting.  PCRA Court Opinion (PCO), 6/6/17, at 1 (citation to the record omitted).  When he arrived, he observed Otero lying in the doorway of the building with a gunshot wound to the head. *Id.*  Officer Howell noticed Eveline Rivera at the scene.  *Id.*  She reported to

_____

[1] 18 Pa.C.S. §§ 2502 and 6106(a)(1), respectively.

police that prior to the shooting, she had seen Appellant standing in front of the building's door, near Otero. She later testified that Appellant "appeared to be 'real mad,' and [Otero] appeared to be scared." She added:

> Appellant said, "I don't want anyone here. Everyone needs to get the f--- out." [Otero] replied, "We can talk later." Ms. Rivera obeyed [Otero]'s command to close the door, started screaming and called 9-1-1. She [then] heard a loud boom.

*Id.* at 2-3 (citation to the record omitted) (edits to adult language made by this Court).

Rosa Santiago sold drugs for Otero out of 2815 North Front Street. PCO at 3. She testified that she saw Appellant "and one other male just walk[] all the way to the house." Notes of Testimony (N. T.), 1/26/10, at 209. She attested that, "[w]hile Appellant's back was towards [Ms. Santiago], he put his hand in his pocket, took his hand out. [Ms. Santiago] then heard a gunshot and [Otero] fell." PCO at 3 (citation omitted). The Commonwealth explicitly asked Santiago: "Who did you see shoot Tone?" N. T., 1/26/10, at 211. Ms. Santiago answered: "The defendant." *Id.* The Commonwealth also specifically asked Ms. Santiago, "What was the other guy [with Appellant] doing, if anything?" *Id.* She replied: "Just standing there." *Id.*

Another witness, Ana Carmona, saw Appellant and Otero "appear to argue." PCO at 3. She testified that Appellant said, "You don't run s--- here. Nobody's supposed to be selling drugs out of here." *Id.* (citation

omitted). She stated that she then "saw Appellant pull out a gun and shoot [Otero]." *Id.*

A statement that Appellant gave to police at the time of his arrest was read into the record:

> . . . Tone turned to me and said, Everything all right with you, little n----? I don't have no problem with you. I then said, Clockwise, meaning I did not have a problem with him.
>
> Tone and I then shook hands, and we started to walk away. Tone grabbed my little brother Jose around the neck after he said, F--- y'all little n-----. Y'all ain't taking over s---.
>
> Tone then pulled out a 9-millimeter Beretta out of his waistband and hit Jose in the head. He then pointed at his head after he hit Jose and said, I'm going to kill this motherf---er. When I saw blood run down my brother's face, I blanked out and fired one shot towards Tone's face. Tone fell to the floor, and we walked away. . . .
>
> **Question:** Where was the decedent standing in reference to your brother when Tone grabbed him?
>
> . . .
>
> **Answer:** Tone was in the doorway at the top of the step. My brother was on the platform step when he grabbed Jose and gripped him up. I was standing on the pavement against the side of the house with one foot on the step . . .

N. T., 1/27/10, at 47, 49 (edits to adult language made by this Court).

> The medical examiner testified:
>
> [T]he presence of the searing, the heat alteration of the skin, the presence of soot along the wound edge, and the presence of this stippling indicates that the muzzle of the gun was very close to and nearly touching the skin at the time that the gun was discharged.
>
> It was not a contact, meaning it was not pressed tightly against the skin but was very, very close and possibly even loosely held against the skin.

N. T., 1/26/10, at 272-73.[2]  The medical examiner did not give a more specific estimate of the distance between the muzzle of the firearm and Otero.

On October 25, 2007, "Appellant was charged and [was later] convicted of the above-stated offenses[.] . . . He was sentenced to an aggregate term of life imprisonment on February 5, 2010." *Commonwealth v. Delvalle*, No. 1994 EDA 2010 (unpublished memorandum at 1).  Appellant filed a timely notice of appeal to this Court. *Id.*  In his direct appeal, he challenged the weight and the sufficiency of the evidence.  *Id.* at 2.  On June 26, 2012, this Court affirmed the judgment of sentence.  *Id.* at 1.

Appellant now raises the following issue on appeal:

> Did the [PCRA] court err in denying [A]ppellant an evidentiary hearing when the [A]ppellant raised a material issue of fact that trial defense counsel was ineffective in failing to request charges to the jury as to defense of others and voluntary manslaughter?

Appellant's Brief at 2.

Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported

---

[2] The medical examiner who testified at trial was not the same medical examiner who performed the autopsy.  N. T., 1/26/10, at 269.  According to the testimony, the medical examiner who performed the autopsy was working in New Jersey at the time of trial, but there was no explanation as to why the Commonwealth did not ask him to travel to Philadelphia to testify.

by the record evidence and free of legal error. ***Commonwealth v. Wilson***, 824 A.2d 331, 333 (Pa. Super. 2003) (*en banc*); ***Commonwealth v. Andrews***, 158 A.3d 1260, 1262-63 (Pa. Super. 2017).

We first note that Appellant has no absolute right to a PCRA hearing. ***Commonwealth v. Burton***, 121 A.3d 1063, 1067 (Pa. Super. 2015) (*en banc*).

Here, Appellant contends that his trial counsel was ineffective. Generally, to obtain relief on a claim of ineffective assistance of counsel, a petitioner must plead and prove that (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused him prejudice. ***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987). If a petitioner fails to prove by a preponderance of the evidence any of the ***Pierce*** prongs, 527 A.2d at 975, the court need not address the remaining prongs. ***Commonwealth v. Fitzgerald***, 979 A.2d 908, 911 (Pa. Super. 2009).

We first consider whether the underlying claim is of arguable merit. ***Pierce***, 527 A.2d at 975. Here, Appellant's underlying claim is that his trial counsel should have requested charges to the jury as to voluntary manslaughter and as to defense of others, because his statement to law enforcement "showed that [he] was acting in **reasonable** and subjective fear for the life of [his] brother when [they were] confronted by the victim with a firearm." Appellant's Brief at 6 (emphasis added).

Voluntary manslaughter is controlled by 18 Pa.C.S. § 2503:

**(a) General rule.**--A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed; or

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

**(b) Unreasonable belief killing justifiable.**--A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

Nowhere -- in his original PCRA petition, his amended PCRA petition, or his brief to this Court -- does Appellant contend that he should have received a voluntary manslaughter charge pursuant to Section 2503(a), involving "a sudden and intense passion resulting from serious provocation." As for Section 2503(b), that subsection requires that Appellant's "belief [be] unreasonable." However, Appellant clearly alleges in his brief to this Court that his belief was "reasonable." Appellant's Brief at 5-6. Accordingly, he was not entitled to an instruction on voluntary manslaughter, and, consequently, his trial counsel could not be deemed ineffective for failing to pursue this meritless claim. *Pierce*, 527 A.2d at 975.

Nevertheless, Appellant may still have been entitled to an instruction on defense of others. To prevail on a justification defense based upon the

- 6 -

use of force for the protection of other persons, there must be evidence that:

> (1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;
>
> (2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
>
> (3) the actor believes that his intervention is necessary for the protection of such other person.
>
> . . . [T]he actor is not obliged to retreat to any greater extent than the person whom he seeks to protect.

18 Pa.C.S. § 506. Section 505 referenced above states: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." *Id.* § 505(a).

> While there is no burden on a defendant to prove the self-defense claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.
>
> If the defendant properly raises self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense.
>
> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the

accused had a duty to retreat and the retreat was possible with complete safety.

The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. The Commonwealth can negate a self-defense claim if it proves the defendant did not reasonably believe he was in imminent danger of death or great bodily injury and it was necessary to use deadly force to save himself from that danger.

*Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (internal brackets, citations, and quotation marks omitted) (some formatting); *see also Commonwealth v. Rivera*, 108 A.3d 779, 791 (Pa. 2014); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012).

In the current case, there was evidence, in the form of Appellant's statement, if it is believed in its entirety, to support a justification defense. Because this evidence could "justify a finding of self-defense," the issue should have been "before the fact finder." *Smith*, 97 A.3d at 787. Ergo, we disagree with the PCRA court's conclusion that there was no "evidence that the shooter was free from fault" and that the underlying claim was of no arguable merit. PCO at 5; *see also Pierce*, 527 A.2d at 975.

Nonetheless, this Court "may [still] affirm a PCRA court's decision on any grounds if the record supports it." *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012) (citations omitted). As noted above, in order to establish ineffective assistance of counsel, an appellant must also prove that the counsel's performance lacked a reasonable basis and that the ineffectiveness caused Appellant prejudice. *Pierce*, 527 A.2d at 975. Here, as the PCRA court did not hold a hearing, we cannot determine whether trial

counsel had a reasonable basis for his decision not to request a justification instruction to the jury. We thus turn to whether Appellant was prejudiced by trial counsel's actions. ***Id.***

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." ***Commonwealth v. King***, 57 A.3d 607, 613 (Pa. 2012) (internal citations and quotation marks omitted). "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." ***Commonwealth v. Burno***, 94 A.3d 956, 972 (Pa. 2014) (citation omitted).

Here, there was some evidence presented by Appellant suggesting that his use of force was necessary to protect another person – *i.e.*, his brother -- from injury and that Appellant was free from fault in provoking or continuing the difficulty that resulted in the slaying. 18 Pa.C.S. § 506; ***Smith***, 97 A.3d at 787. Most obviously, there is Appellant's own statement. N. T., 1/27/10, at 47, 49. Officer Howell's testimony that he found Otero in the doorway of 2815 North Front Street aligns with Appellant's description of where Otero was standing when he was shot. PCO at 1-2. One of the fact witnesses, Rivera, did not actually see Appellant shoot Otero; she just heard cursing, which again corresponds to Appellant's recitation in his statement.

*Id.* at 2-3; N. T., 1/27/10, at 47, 49. Another fact witness, Santiago, observed a second man with Appellant, thus supporting Appellant's assertion that his brother was with him and Otero. Additionally, the medical examiner stated that the bullet that killed Otero was fired at very close range, but the firearm was not pressed against Otero's skin. N. T., 1/26/10, at 272-73. The medical examiner did not provide a more detailed estimate of how far away the firearm had to have been from Otero – *e.g.*, an inch away, a foot away, etc. Since the medical examiner's testimony that "the muzzle of the gun was very close" to Otero, without anything more specific, it is feasible that a fact-finder could have concluded that the medical examiner's testimony was in accordance with Appellant's statement that he was standing close to Otero when he fired – specifically, that Otero was standing "in the doorway at the top of the step," and Appellant "was standing on the pavement . . . with one foot on the step[.]" N. T., 1/27/10, at 49.

However, there was abundant evidence contradicting Appellant's narrative. Rivera described Appellant as "real mad" before the shooting. PCO at 2. Carmona also saw Appellant and Otero "appear to argue" before the shooting. *Id.* at 3. Rivera and Santiago heard Appellant curse at Otero. *Id.* at 2-3. Appellant's angry words prior to the shooting suggest that he provoked the difficulty. Santiago and Carmona both testified that they saw Appellant put his hand in his pocket and pull something out of it, again implying that Appellant continued the difficulty. *Id.* at 3. Santiago further testified that the other man with Appellant – possibly his brother – was just

- 10 -

standing and therefore not being attacked by Otero, which refutes Appellant's story. Most importantly, both Santiago and Carmona actually saw Appellant shoot Otero. *Id.*

Given the strength of this evidence that Appellant was the aggressor and not acting in defense of others, he cannot show that there is a reasonable probability that, had trial counsel requested an instruction on justification, the result of the proceeding would have been different. *King*, 57 A.3d at 613. Appellant thus cannot demonstrate prejudice and has failed to establish the third *Pierce* prong, 527 A.2d at 975, and his entire ineffectiveness claim therefore fails. *Fitzgerald*, 979 A.2d at 911.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/18