J-S17037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　:　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
KENNY MUESES　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　Appellant　　　　　　　:　No. 1424 MDA 2020

Appeal from the PCRA Order Entered October 16, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004909-2003

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:　　　　　　　**FILED JULY 13, 2021**

Kenny Mueses (Mueses) appeals from the order of the Court of Common Pleas of York County (PCRA court) denying as untimely his second petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After review, we affirm.

**I.**

**A.**

On January 21, 2005, Mueses was convicted of one count of first-degree murder for shooting and killing Marcus Jackson.  We summarized the facts of the murder as follows:

> At approximately 3:00 a.m. on June 7, 2003, Tanisha Taylor placed a 911 call reporting a domestic disturbance involving her boyfriend Anthony Faison.  Specifically, Taylor complained that

---

[*] Retired Senior Judge assigned to the Superior Court.

Faison would not leave her residence despite her requests that he do so. In response, a City of York Police Officer was dispatched to Taylor's residence at 125-B Lincoln Street. After arriving and determining that Faison was no longer present, the officer departed, leaving Taylor on her front porch.

During this time, Mueses was next door at 125-A Lincoln Street, visiting with a friend. After the police officer left, Mueses, a friend of Faison's, approached Taylor. Mueses asked Taylor why she had called the police on Faison. Taylor did not know Mueses, and responded by asking Mueses to identify himself. Instead of answering Taylor's question, Mueses persisted in his questioning, and the conversation quickly became heated.

As Taylor and Mueses continued to argue, Marcus Jackson, a friend of Taylor's, ask[ed] for everyone to "chill." Jackson's intervention caused Mueses to focus his attention on Jackson. Mueses began yelling at Jackson and took a step or two towards Jackson. As Mueses approached Jackson, Taylor physically interposed herself between the two. Mueses then produced a gun and used it to punch Johnson in the chest over Taylor's shoulder. Jackson, in an attempt to defuse the situation, told Mueses that no one wanted trouble. At the same time, Mueses's friend, Sha'ron Valenti, attempted to restrain Mueses. After Valenti mentioned Mueses's daughter, Mueses paused for a second before shooting Jackson twice.

Jackson managed to crawl into Taylor's kitchen, where he was later found by an EMT. Jackson died from his injuries a few days later. Mueses was charged with first degree murder. Subsequently, Mueses proceeded to a trial by jury that ran from January 18-21, 2005. At trial, Mueses argued that he had acted in self-defense after seeing Jackson draw a gun first. At the conclusion of the trial, the jury found Mueses guilty of first degree murder. Thereafter, the trial court sentenced Mueses to life imprisonment[.]

**Commonwealth v. Mueses**, No. 811 MDA 2005, unpublished memorandum

at 1-2 (Pa. Super. 2006).

Rejecting Mueses's claim that the evidence was insufficient to convict

beyond a reasonable doubt, we affirmed the judgment of sentence on direct

appeal. Mueses did not petition for allowance of appeal in the Supreme Court. He did, however, file a timely PCRA petition raising several ineffective assistance of counsel claims. After holding an evidentiary hearing, the PCRA court denied the petition. We affirmed the denial of relief, and the Supreme Court denied allowance of appeal. **Commonwealth v. Mueses**, 1381 MDA 2007 (Pa. Super. 2009) (unpublished memorandum), *appeal denied*, 991 A.2d 312 (Pa. 2010).

**B.**

On July 13, 2020, Mueses filed a counseled second PCRA petition asserting an after-discovered evidence claim of a **Brady** violation.[1] His claim focused on Tanisha Taylor (Taylor), one of the main witnesses to testify against him at trial. He alleged that the Commonwealth failed to disclose that, at the time of his trial, Taylor was suspected of stabbing a woman named Vicki Shaw in November 2002 while at a bar in York. As alleged by Mueses, the Commonwealth never charged Taylor because it would hurt her credibility at his trial.

Recognizing that his claim was facially untimely, Mueses asserted that his claim fell within the PCRA time-bar exceptions for governmental

---

[1] **See Brady v. Maryland**, 373 U.S. 83, 87 (1963) (holding that suppression by the prosecution of evidence favorable to a defendant violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.).

interference and newly-discovered facts. 42 Pa.C.S.§ 9545(b)(1)(i), (ii).

According to Mueses, he first heard about Shaw in 2010 or 2011 when corresponding with a female friend named Amanda McHaffie. Mueses explained in an affidavit:

> In writing, a conversation came up that lead to me telling her that a chick named Tanisha Taylor aka Tommi testified against me. When Amanda wrote me back she stated that a chick named Tanisha had stabbed her aunt, an aunt in which she doesn't really talk to. She stated that the Tanisha that stabbed her aunt (Vicki Shaw) was used in a murder trial but wasn't sure if it was the same Tanisha in my case. Since nobody really calls Tanisha by her name, everyone calls her Tommi. When Amanda never mentioned or responded to the name Tommi, I assumed that this Tanisha that had stabbed her aunt was a completely different person from the Tanisha at my trial.

Mueses next claimed that he was incarcerated in the State Correction Institution at Forest around 2012 or 2013 when he spoke to an inmate named Ian Brenner who was also from York. According to Mueses, this inmate "told me that his mother told him that Tanisha Taylor's only reason for testifying was to get rid of an attempted murder charge." Mueses, however, did not believe that this was enough information to be sure that it was related to his case. As a result, rather than file a PCRA petition and request counsel, Mueses waited until he was financially able to hire counsel and a private investigator to get more information about Taylor's assault of Shaw.

According to Mueses, it was not until 2019 when he could finally afford to hire a private investigator named Keith Kreider to find and interview Shaw. According to his report attached to the petition, Kreider interviewed Shaw at

her apartment in October 2019. During the interview, Shaw described being at a bar in York in late 2002 when a female she did not know "slashed her across the chest." Shaw later met with the police and identified the woman in a photo array. Shaw believed her name was "Tanisha" and that the police were familiar with her. After that, however, Shaw heard nothing further. She later tried to find out the status of her case but was told that "Tanisha" had received a plea deal. When Shaw complained, "prosecutors" told her that her assailant was a witness in a murder trial and that "they could not have their witness showing up in an orange prison jump suit, or have a felony charge against her."

According to Kreider's report, on November 27, 2019, Shaw sent him a text message describing how she tried to get a copy of the police report of her assault after her interview with Kreider. The York Police Department, however, denied the request and told her that she would need to file a FOIA request. Shaw also told Kreider that she wanted no further involvement in the matter.

On December 20, 2019, PCRA counsel subpoenaed the 2002 report of the assault. Less than two weeks later, on January 2, 2020, the York Police Department provided the report to counsel, stating that it had no further information related to the matter. The report confirmed that on November 9, 2002, the police were dispatched to a fight at a bar in York. According to the report, Shaw approached the police with a "vertical slice mark on her chest,

just to the right of her sternum above her right breast." Shaw told the responding officer that "she recognized the suspect but did not know her name," while one of the security guards told the police that the suspect's name was "Tommi Wiggins." The police report contained nothing further.

On August 26, 2020, the PCRA court issued notice of its intent to dismiss the petition without hearing under Pa.R.Crim.P. 907. In its notice, the PCRA court first found that the petition was untimely because Mueses did not exercise due diligence in pursuing the information about Shaw that he first learned in 2012 or 2013. Addressing the newly-discovered facts exception under 42 Pa.C.S. § 9545(b)(1)(ii), the PCRA court found that Mueses's explanation for waiting until he was financially able to retain counsel and a private investigator "is not a cognizable reason for failing to file his Petition in a timely manner." Rule 907 Notice, 8/26/20, at 1.

The PCRA court found the same in holding that the governmental interference exception under 42 Pa.C.S. § 9545(b)(1)(i) was inapplicable. The PCRA court explained:

> Waiting seven years to bring this claim is not a hallmark of due diligence. If [Mueses] had filed a *pro se* PCRA Petition at the time he became aware of the alleged government interference, then counsel would have been appointed to him to explore his claim. The argument that [Mueses] waited seven years until he could personally hire someone to track down the parties relevant to his claim, when he had the option to immediately file a PCRA Petition to preserve his rights, is absurd.

*Id*. at 2.

- 6 -

Further, because Mueses's petition was a second or subsequent petition, the PCRA court examined whether his claim presented a strong *prima facie* showing that a miscarriage of justice may have occurred.[2] Finding that it did not, the PCRA court gave two reasons. First, the PCRA court found that the evidence of the alleged deal between the Commonwealth and Taylor was speculative. On this point, the PCRA court highlighted that Taylor's alleged assault of Shaw happened in November 2002, nearly seven months before Mueses shot Jackson in June 2003 and, even assuming the claim were true, the Commonwealth's decision not to charge Taylor was apparently made before Mueses committed his murder. The PCRA court's second reason was that there were other witnesses at Mueses's trial that corroborated Taylor's trial testimony.

The PCRA court echoed this second reason in finding that Mueses could not establish a **Brady** violation, even if it deemed the petition timely, because he could not establish the materiality of the evidence. The PCRA court stated:

> ... the allegedly compromised witness, Tanisha Taylor, was directly adjacent to the shooting victim, who was standing on a house porch with her, and near [Mueses], who was standing in the front of the porch. Another witness corroborated this fact. Multiple witnesses testified that Tanisha Taylor ran next door crying and frantically seeking help immediately after the victim had been shot. Ms. Taylor also testified that she never had any prior

---

[2] "A second or subsequent request for PCRA relief will not be entertained unless the petitioner presents a strong *prima facie* showing that a miscarriage of justice may have occurred." **Commonwealth v. Abu-Jamal**, 941 A.2d 1263, 1267 (Pa. 2008) (citation omitted).

dealings with [Mueses] before he came up to her that night and accosted her for calling the police on her abusive boyfriend, who was an acquaintance of [Mueses].

*Id*. at 4-5.

After receiving Mueses's response, the PCRA court formally dismissed the petition on October 14, 2020, following which he filed this appeal to challenge the dismissal of his petition.[3]

## II.

We begin by examining the timeliness of Mueses's petition. Generally, the PCRA's time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. *See Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

---

[3] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Weimer*, 167 A.3d 78, 81 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.* (citation omitted). "[A] PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." *Commonwealth v. Brown*, 161 A.3d 960, 964 (Pa. Super. 2017) (citations omitted).

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

    (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

    (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

    (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, any petition invoking an exception to the time bar "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Mueses's judgment of sentence became final in 2006 when he did not file a petition for allowance of appeal from this Court's affirmance of his judgment of sentence. *See* 42 Pa.C.S. § 9543(b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."). Because his second petition was filed more than a decade after the judgment of sentence became final, it is facially untimely.

As noted earlier, Mueses asserted two exceptions to the PCRA jurisdictional time-bar, both of which have a due diligence requirement. The first is the governmental interference exception under 42 Pa.C.S. § 9545(b)(1)(i). Under that exception, "the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by government officials, and that the information could not have been obtained earlier with the exercise of due diligence." **Commonwealth v. Smith**, 194 A.3d 126, 133 (Pa. Super. 2018) (citation omitted).

The other exception is the newly-discovered facts exception under 42 Pa.C.S. § 9545(b)(1)(ii). That exception requires a petitioner to establish that: (1) "the facts upon which the claim was predicated were unknown;" and (2) the facts "could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). "[T]he due diligence inquiry is fact-sensitive and dependent upon the circumstances presented." **Commonwealth v. Burton**, 121 A.3d 1063, 1070 (Pa. Super. 2015) (*en banc*) (footnote omitted). "[D]ue diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." **Id.** at 1071.

Mueses argues that the PCRA court erred in finding that he did not act with due diligence in discovering more information about Taylor allegedly assaulting Shaw and the Commonwealth not charging her because it would

hurt her credibility. Central to Mueses's argument is his belief that he had no means of pursuing the information back in 2012 or 2013 when he first heard about it through a fellow inmate. Mueses contends that he would not have been entitled to appointed counsel if he had filed a *pro se* petition, since petitioners are not entitled to appointed counsel on a second or subsequent petition unless an evidentiary hearing is ordered. **See** Pa.R.Crim.P. 904(D). At the time, Mueses believed he did not have information to file a petition, characterizing the inmate's information as a "rumor" requiring further corroboration. As a result, Mueses asserts, he had no way of learning anything further until he could save up enough money to hire PCRA counsel and an investigator to find out if the information was even relevant to his case.

We cannot agree with Mueses that were was nothing he could have done when he first heard that Taylor may not have been charged with a separate assault because it would damage her credibility at trial. First, his argument presupposes that his only avenue for gaining more information was hiring a private investigator to find Shaw. As noted earlier, Mueses admits in his affidavit that he first heard about Shaw in 2010 or 2011 from his friend, McHaffie, and that Shaw had been stabbed by someone named "Tanisha" who also testified in a murder trial. Despite the possible connection, Mueses did not attempt to contact Shaw or ask his friend, who was Shaw's niece, for Shaw's contact information to try and learn more.

Second, Mueses fails to explain why he did not try to contact the inmate's mother about how she knew that "Tanisha Taylor's only reason for testifying was to get rid of an attempted murder charge," whether that be by trying to contact her through mail or have family members try to do so. Of course, if either option was possible or were unsuccessful, then Mueses could have explained those efforts to show that took reasonable efforts, based on the circumstances, to uncover facts that may support a claim for relief. Here, Mueses knew of someone who apparently knew about Taylor's testimony—the inmate's mother—but took no steps to contact her to find out how she knew about Taylor.

Third, Mueses fails to explain why Shaw could not have been found earlier than 2019 and only through a private investigator. His petition contains no information about how he found Shaw, as the investigator's report states only that he found her "[t]hrough investigative research." In his brief, meanwhile, Mueses asserts that the investigator found her by cold calling every Vicki Shaw in York County. See Mueses's Brief at 11. If this was how his investigator found Shaw, Mueses fails to explain what would have prevented him from, at the very least, making efforts to try and learn her contact information. If he had made such efforts but they were unsuccessful, then his central claim—that he had to wait seven years to hire an investigator—would have more merit. *See Commonwealth v. Priovolos*, 746 A.2d 621, 626 (Pa. Super. 2000) (finding newly-discovered evidence

exception inapplicable where petition used privative investigator to uncover exculpatory witness almost a decade after trial; "no attempt to explain why the information contained in these statements could not, with the exercise of due diligence, have been obtained much earlier"); **Commonwealth v. Jarmon**, 2020 WL 5513561, *4 (Pa. Super. 2020) (unpublished memorandum) (finding PCRA petitioner failed to show why he did not find alleged exculpatory witness earlier through due diligence where he hired investigatory team nine years after trial).

Fourth, we also note that Mueses's petition contained no information about the efforts he made to obtain a private investigator. In his petition, Mueses stated that he was "unable to locate Ms. Shaw or any information pertaining to her case on his own." **See** PCRA Petition, 7/13/20, at 7. It is unclear from this whether Mueses or his family took affirmative steps to trying to find Shaw or he assumed he would be unable to because he was incarcerated. Either way, his argument hinges on his belief that he had no alternative but to retain a private investigator. Again, however, his petition contains no information about what efforts he took to hire an investigator— whether he did so after first learning the possible new information or whether he did so after his efforts to find Shaw failed. Instead, in his petition, Mueses stated only that he retained an investigator when he was "financially able." Mueses, however, provides no case law for this argument, nor has our

research uncovered any for the proposition that a petitioner can indefinitely delay filing a petition for years until he can retain a private investigator.

Finally, as the PCRA court recognized, Mueses could have filed a *pro se* PCRA petition and been appointed counsel under Pennsylvania Rule of Criminal Procedure 904. ***See Commonwealth v. Smith***, 818 A.2d 494, 497 (Pa. 2003) (counsel should be appointed in every case where defendant filed first PCRA and cannot afford or otherwise procure counsel; however, Rule 904 limits appointment of counsel on second or subsequent petitions so counsel should be appointed only if court, in its discretion, determines evidentiary hearing is required in interests of justice). Subpart D of Rule 904 states: "On a second or subsequent petition, when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, and an evidentiary hearing is required as provided in Rule 908, the judge shall appoint counsel to represent the defendant." Pa.R.Crim.P. 904(D). Rule 908 requires an evidentiary hearing when "the petition for post-conviction relief or the Commonwealth's answer, if any, raises material issues of fact. ..." Pa.R.Crim.P. 908(A)(2). Additionally, subpart E states: "The judge shall appoint counsel to represent a defendant whenever the interests of justice require it." Pa.R.Crim.P. 904(E).

As noted above, the PCRA court stated in its Rule 907 notice that if Mueses had filed a PCRA petition when he became aware of the new information, then counsel "would have been appointed to him to explore his

claim." Mueses calls this statement "untenable" and argues that the PCRA court would have been acting outside its jurisdiction if it had appointed counsel because there was no issue of material fact. *See* Mueses's Brief at 10.

This argument, however, ignores that a PCRA court can appoint counsel "whenever the interests of justice requite it." Pa.R.Crim.P. 907(E). Thus, contrary to Mueses's assertion, the PCRA court would not have been without jurisdiction to appoint counsel, and very well could have appointed counsel— as it represents it would have—to explore his claim. Even if the PCRA court had dismissed his petition and not appointed counsel, then Mueses would have shown that, at the very least, he tried to alert the PCRA court about the new information at the time he learned of it and then undertook reasonable efforts to uncover that information by filing a petition and seeking counsel rather than presupposing that counsel would be denied.[4]

---

[4] Because we find that the PCRA court properly found that Mueses's second PCRA petition was untimely, we need not address the court's holding that the petition did not present a strong *prima facie* showing that a miscarriage of justice may have occurred. *See* Rule 907 Notice, 8/26/20, at 2-3. We would note, however, that Mueses fails to address this holding in his brief.

We also need not address the PCRA court's holding that Mueses cannot establish a ***Brady*** violation because he could not establish the materiality of the new information. *Id*. at 4-5. We note only that Mueses raised the alleged ***Brady*** violation as an after-discovered evidence claim under 42 Pa.C.S. § 9543(a)(2)(vi). To establish an after-discovered evidence claim, "a petitioner must prove that (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict."
*(Footnote Continued Next Page)*

We hold that the PCRA court correctly concluded that Mueses failed to exercise due diligence in waiting seven years to file his second PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/13/2021

---

***Commonwealth v. Cox***, 146 A.3d 221, 228 (Pa. Super. 2016) (citation omitted). Here, Mueses's claim was not based on new information about the murder of Jackson. Instead, the information about Taylor not being charged for assault would be used solely to impeach her credibility, as the alleged assault of Shaw was a separate incident that predated Mueses's offense by over six months. As a result, the evidence could not form the basis for an after-discovered evidence claim.