J-S12009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD WELLS | : | |
| | : | |
| Appellant | : | No. 615 EDA 2021 |

Appeal from the PCRA Order Entered March 12, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005989-2008

BEFORE:  BENDER, P.J.E., BOWES, J., and DUBOW, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JULY 26, 2022**

Appellant, Edward Wells, appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we vacate the order denying Appellant's petition and remand for an evidentiary hearing.

In affirming Appellant's judgment of sentence during his direct appeal, this Court summarized the factual and procedural history of this case as follows:

> On April 9, 2008, Appellant and two other men approached an individual named Jarrett Williams and shot at him.  Appellant was wearing a hooded sweatshirt with his hood up and his cohorts were wearing ski masks.  The victim, Ronald Green, was nearby at a local Chinese store.  Mr. Green knew Appellant, who had lived in the area the previous summer.  As Appellant approached him, Mr. Green asked Appellant if he was "ButterRoll," Appellant's nickname.  Appellant responded in the affirmative and stated he had words for the victim.  Appellant then raised his weapon and fired a shot at Mr. Green.  Police responded to the area for shots

fired. Mr. Green told police that "ButterRoll" shot at him and described him as being five foot five inches in height. Appellant is five foot five inches tall. In addition, Mr. Green and Mr. Williams both selected a photograph of Appellant as "ButterRoll."

Police arrested Appellant on April 10, 2008, and filed the original criminal complaint in this matter on April 11, 2008. The case was listed for trial on April 14, 2010, but was continued to the next day at the Commonwealth's request after three Commonwealth witnesses, including Mr. Green, failed to appear. Efforts to locate Mr. Green proved unsuccessful, and the court continued the case upon motion of the Commonwealth, with jury selection to begin on August 24, 2010. Appellant filed a [Pa.R.Crim.P.] 600 motion, alleging that the Commonwealth had not timely brought Appellant to trial. The court denied that motion on August 24, 2010, and the parties selected eleven jurors that day. Still unable to locate Mr. Green, on August 25, 2010, the Commonwealth requested a continuance. Upon the court denying that request, the Commonwealth asked the court to *nolle prosse* the matter without prejudice. The trial court granted that request over Appellant's objection. Appellant appealed, arguing that the trial court erred in issuing a *nolle prosse* and declining to grant his Rule 600 motion.

This Court addressed Appellant's claim on the merits and affirmed, finding that no Rule 600 violation had occurred as of August 25, 2010. ***Commonwealth v. Wells***, 50 A.3d 248 (Pa. Super. 2012) (unpublished memorandum). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on February 28, 2013. The record, then lodged with this Court, was returned to the trial court on April 10, 2013[,] and received by that court on April 11, 2013. However, prior to the physical record being returned to the court of common pleas, and over Appellant's objection, the court granted the Commonwealth's motion to vacate the *nolle prosse* on March 20, 2013. The court then scheduled a scheduling conference before a different judge for April 3, 2013. That judge then set this matter for trial on May 20, 2013.

Mr. Green and another witness, Nalene Gravely, failed to appear. The court issued bench warrants for those individuals and continued the case to the following day. Appellant renewed his motion to dismiss under Rule 600, and the court denied that request. The following day, the Commonwealth, having apprehended Mr. Green, asked for and received permission to hold

- 2 -

him in custody as a material witness. Trial began that same date and concluded on May 23, 2013. At trial, Mr. Green denied that it was Appellant who fired the shot at him. The prosecution then introduced a signed written statement Mr. Green provided to police in which he identified Appellant as the perpetrator and selected him from a photographic array as the shooter.[1]

*Commonwealth v. Wells*, No. 2570 EDA 2013, unpublished memorandum at 1-4 (Pa. Super. May 12, 2015).

The jury convicted Appellant of aggravated assault, possession of an instrument of crime, carrying a concealed firearm without a license, and carrying a firearm on the public streets of Philadelphia, but acquitted him of attempted murder. *Id.* at 4. Appellant was subsequently sentenced to 9½ to 22 years' incarceration. *Id.* On direct appeal, Appellant raised 28 issues. *Id.* This court affirmed his judgment of sentence, and our Supreme Court denied further review. *Commonwealth v. Wells*, 122 A.3d 446 (Pa. Super. 2015) (unpublished memorandum), *appeal denied*, 132 A.3d 458 (Pa. 2016).

Appellant filed a previous PCRA petition, his first, on August 31, 2016. Following multiple amendments and an evidentiary hearing, the PCRA court ultimately dismissed that petition by order dated November 3, 2017. Appellant filed a timely notice of appeal from that order, but he ultimately withdrew that appeal on March 26, 2019.

---

[1] Additionally, we note that in his statement to police on the night of the shootings, Jarret Williams indicated that he was able to identify Appellant, despite the fact that Appellant was wearing a mask, because Green told Williams that Appellant had been the shooter based on Green's verbal interaction with the shooter. *See* N.T. Trial, 5/22/13, at 177. At Appellant's trial, Williams, like Green, also recanted large portions of his statement to police.

While his prior appeal was pending before this Court, Appellant filed, *pro se*, a PCRA petition on January 24, 2018. In that petition, Appellant alleged the discovery of new evidence from Dontae Wright (hereinafter "Wright"), and Appellant attached to his petition a notarized affidavit from Wright (hereinafter "Wright affidavit" or "Wright's affidavit"). **See** PCRA Petition, 1/23/18, Exhibit A. In his affidavit, Wright claimed that, around the same time as the assault of Green, he was attacked by a hooded gunman wearing all black, who asked, "where is ButterRoll" while assaulting Wright. **Id.** Appellant argued in his petition that this was new, exculpatory evidence because, as established at his trial, Appellant was/is the person known as "ButterRoll," and thus Wright's affidavit suggests that Green's assailants were looking for Appellant and, consequently, that Appellant was not one of Green's attackers. **Id.** at 1-2.

Counsel was appointed and filed amended petitions on Appellant's behalf on May 9, 2019, and September 17, 2019. On January 8, 2021, the PCRA court issued a boilerplate, Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without hearing, wherein the court indicated that the "issues raised in the original and amended [PCRA] petition are without merit." Rule 907 Notice, 1/8/21, at 1 (single page). Appellant filed a timely response on January 28, 2021, but the PCRA court ultimately issued an order denying the petition on March 12, 2021. This timely appeal followed. Appellant filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on May 5, 2021, and the court issued its Rule 1925(a) opinion on August 17, 2021.

Appellant now presents the following questions for our review:

- 4 -

1. Did the PCRA [c]ourt err by dismissing [Appellant]'s PCRA Petition as untimely when newly[-]discovered evidence was uncovered on December 6, 2017[,] and [Appellant]'s *pro se* PCRA Petition was filed, alleging the newly discovered evidence, on January 24, 2018, merely forty-nine (49) days after the facts upon which the claim was predicated became known to [him]?

2. Did the PCRA [c]ourt err by dismissing [Appellant]'s PCRA Petition without first holding an evidentiary hearing when [Appellant] raised a claim of newly[-]discovered evidence, in the form of a previously unknown eyewitness, who authored, signed and notarized an affidavit stating he was present and a victim himself of the crime in question[,] and that the perpetrators of the crime were demanding to know where [Appellant] was, indicating that [he] was not one of the perpetrators?

Appellant's Brief at 2.

As is pertinent to both issues before this Court, we

> review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal

citations omitted). Here, the record does not include a PCRA hearing, because

the PCRA court declined to hold one. Nevertheless,

> the right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the

- 5 -

responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Khalifah*, 852 A.2d 1238, 1239–40 (Pa. Super. 2004) (citations omitted).

## 1.

In his first issue, Appellant essentially contends the PCRA court erred in determining that he failed to meet an exception to the PCRA's timeliness requirements. The PCRA's time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. *Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, section 9545(b)(2) requires that any petition attempting to invoke one of these exceptions "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).[2]

Here, it is undisputed that Appellant was required to avail himself of a timeliness exception due to the facial untimeliness of the PCRA petition currently under review.[3] Nevertheless, the PCRA court indicated that it had dismissed Appellant's petition on the merits in its Rule 907 notice, and only first suggested that Appellant failed to meet a timeliness exception in its Rule

---

[2] Section "9545(b)(2) originally provided that a petition invoking a timeliness exception was required to be filed within sixty days of the date the claim could first have been presented. However, effective December 24, 2018, the legislature amended Subsection 9545(b)(2)" to increase that time limit to one year." **Commonwealth v. Vinson**, 249 A.3d 1197, 1204 n.5 (Pa. Super. 2021). "The amendment to Subsection 9545(b)(2) only applies to 'claims arising on [December] 24, 2017, or thereafter.'" **Id.** (quoting 42 Pa.C.S. § 9545(b)(2) (comment)).

[3] The petition under review was untimely because it was not filed by May 25, 2017, one year after the 90-day time-period for filing *certiorari* in the United States Supreme Court elapsed. PCRA Court Opinion ("PCO"), 8/17/21, at 4. Appellant concedes the facial untimeliness of his petition in this regard, but argues that his petition meets an enumerated exception. Appellant's Brief at 8.

1925(a) opinion. In its Rule 1925(a) opinion, the PCRA court indicated that

Appellant's PCRA petition was untimely because

> Wright's affidavit is included in [Appellant's] amended petition filed 11 years after his arrest and six years after his conviction at trial where two eyewitnesses identified [him] as the shooter. [Appellant's] amended PCRA petition provides no explanation as to why the information provided by Wright could not have been learned sooner. Additionally, the Wright affidavit is dated December 6, 2017[,] and yet [Appellant] did not file his second PCRA petition citing to the Wright affidavit until March 5, 2019, which was more than 15 months after the Wright affidavit is dated. Even if the untimeliness is excused as [newly-]discovered evidence, [Appellant]'s second PCRA petition was untimely because it [was] not filed within one year of the date that one of the exceptions could have been presented, *i.e.*, December 6, 2018.

PCO at 5-6.

We begin where the PCRA court ended, with the court's indicating that

Appellant failed to satisfy the 1-year time limit set forth in section 9545(b)(2).

As discussed above, claims that could have been raised before December 24,

2017 are subject to the pre-amended time limit of 60 days. **See** n.2, **supra**.

Appellant's claim ostensibly falls under the prior version of section 9545(b)(2),

given the date on Wright's affidavit, which was December 6, 2017.

Appellant first filed a *pro se* petition raising a claim regarding Wright's

affidavit on January 24, 2018, not on March 5, 2019, the latter being the date

on which Appellant filed an unrelated, *pro se* PCRA petition.[4] Wright's affidavit

_____

[4] In Appellant's *pro se* PCRA petition filed on March 5, 2019, he listed the lower court's docket number assigned to this matter, CP-51-CR-0005989-2008 ("case 5989"), alongside the docket number of an unrelated case, CP-51-CR-
*(Footnote Continued Next Page)*

- 8 -

was attached to the January 2018 petition, which was filed well-within 60 days as measured from the date of the affidavit.

However, Appellant's January 2018 petition was premature. His appeal from the dismissal of his first PCRA petition was still pending until this Court granted Appellant's motion to withdraw that appeal on March 26, 2019.[5] "Pennsylvania law makes clear the trial court has no jurisdiction to consider a subsequent PCRA petition while an appeal from the denial of the petitioner's prior PCRA petition in the same case is still pending on appeal." *Commonwealth v. Beatty*, 207 A.3d 957, 961 (Pa. Super. 2019). Thus, the PCRA court had no jurisdiction to entertain a petition based on the newly-discovered evidence from Wright's affidavit while this Court still held jurisdiction of the appeal from the denial of Appellant's prior PCRA petition in this case.[6] Consequently, the clock could not start running for purposes of Section 9545(b)(2) on the date of Wright's affidavit. Instead, in these circumstances,

> [w]here a prior petition is pending on appeal, a subsequent petition must be filed within the time limits set forth in Section 9545(b)(2) **as measured from the date of the order that**

---

0004435-2013 ("case 4435"). However, apart from listing case 5989's docket number, the March 2019 petition exclusively raised matters concerning case 4435.

[5] **See** Order Dismissing Appeal at 32 EDA 2018, 3/26/19, at 1 (single page).

[6] We note that, even if Appellant's March 5, 2019 petition was related to this matter, the PCRA court lacked jurisdiction to consider it at that time due to the still-active prior PCRA appeal in case 5989.

> **finally resolves the appeal in the prior petition, because that date is the first date the claim could be presented**.

*Id.* at 963 (emphasis added).

Here, Section 9545(b)(2)'s time limit began on the date this Court granted Appellant's motion to withdrawal his prior PCRA appeal, which was March 26, 2019. Appellant's next filing after that date occurred 44 days later, on May 9, 2019, when his counsel filed an amended PCRA petition, in which he (again) raised Wright's affidavit as newly-discovered evidence. *See* Appellant's Amended PCRA Petition, 5/9/19, at 2 ¶¶ 6-7 (unnumbered pages). Based on this record, we conclude that Appellant satisfied Section 9545(b)(2)'s time limit, as his May 2019 petition, raising a claim pertaining to Wright's affidavit, was filed within 60 days of the date he was first able to raise it.[7]

Next, the PCRA court also determined that Appellant failed to satisfy the requirements of the newly-discovered evidence exception because Appellant ostensibly did not "establish that he could not have learned of the facts in Wright's affidavit by exercising due diligence." PCO at 5.

> The timeliness exception set forth in Section 9545(b)(1)(ii) … requires a petitioner to plead and prove: (1) she did not know the fact(s) upon which she based her petition; and (2) she could not have learned those fact(s) earlier by the exercise of due diligence.

---

[7] We note that existing caselaw does not make it clear whether the 60-day or 1-year time limit applies to claims which might have been raised before December 24, 2017 but for a pending, prior PCRA appeal that did not terminate until after that date. However, we need not address that question today as Appellant's petition, filed on May 9, 2019, satisfies both the pre- and post-amended time limit of Section 9545(b)(2), as it was filed within 60 days of the date Appellant's prior appeal was withdrawn.

> ***Bennett***, ***supra***. Due diligence demands the petitioner to take reasonable steps to protect her own interests. ***Commonwealth v. Carr***, 768 A.2d 1164 (Pa. Super. 2001). This standard, however, entails "neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." ***Commonwealth v. Burton***, 121 A.3d 1063, 1071 (Pa. Super. 2015) (*en banc*), *aff'd*, … 158 A.3d 618 ([Pa.] 2017). Thus, "the due diligence inquiry is fact-sensitive and dependent upon the circumstances presented." ***Id.*** at 1070. A petitioner must explain why she could not have learned the new fact earlier with the exercise of due diligence. ***Commonwealth v. Breakiron***, … 781 A.2d 94 ([Pa.] 2001). This rule is strictly enforced. ***Commonwealth v. Monaco***, 996 A.2d 1076 (Pa. Super 2010)….

***Commonwealth v. Shiloh***, 170 A.3d 553, 557–58 (Pa. Super. 2017).

The PCRA court summarily concluded that Appellant's amended PCRA petition provided "no explanation as to why the information provided by Wright could not have been learned sooner." PCO at 5. Appellant argues that in the at-issue affidavit, "Wright indicated that he never came forward as a witness because he was scared. If the witness himself was admittedly unwilling, at the time, to make his existence known to anyone, it would have been impossible for [Appellant] to have discovered this evidence with any amount of due diligence." Appellant's Brief at 14-15.

In Wright's affidavit, Wright explicitly stated that he did not come forward on the day of the shooting because he was scared to do so. Wright's Affidavit, 12/6/17, at 1 (single page). Moreover, there is no evidence of record indicating that the incident involving Wright was known to Appellant, or should have been known to him, until Wright made contact with Appellant in prison and provided him with the at-issue affidavit. While "a defendant who fails to

- 11 -

question or investigate an obvious, available source of information[] cannot later claim evidence from that source constitutes newly discovered evidence," the record here does not support a determination Wright was an obvious source of potentially exculpatory evidence in Appellant's case. ***Commonwealth v. Padillas***, 997 A.2d 356, 364 (Pa. Super. 2010). On the face of the Wright affidavit, Wright's observations on the same evening of the assault on Green were only known to him until he approached Appellant in prison many years later.

Moreover, even if not immediately apparent from the Wright affidavit itself, Appellant repeatedly made this argument before the PCRA court. In the memorandum of law filed in support of his *pro se*, January 2018 PCRA petition, Appellant explicitly argued that he did not learn of the facts in Wright's affidavit until Wright met with him in the chapel at S.C.I. Graterford in "late 2017." Memorandum in Support of Appellant's *pro se* PCRA Petition, 1/19/18, at 2. He also averred therein that "a reasonable investigation could not have revealed that [Wright] was there on 4/9/2008 being held up or almost killed by masked men actually looking for a man named 'ButterRoll,' which happens to be [Appellant]. And if the Commonwealth's prosecutors did not know, [Appellant] and his counsel had no reason to look for this evidence and probably could not have found it if they had." ***Id.***

Additionally, in Appellant's counseled, May 2019 amended petition, he specifically incorporated the contents of his *pro se*, January 2018 petition. Appellant's Amended PCRA Petition, 5/9/19, at ¶ 6 ("This Amended Petition

- 12 -

specifically incorporates all allegations in said petition filed by the petitioner as though expressly set forth herein."). Furthermore, in a memorandum accompanying Appellant's May 2019 petition, he specifically argued that "[t]he newly discovered evidence in this matter was unavailable as [Appellant] had no way at the time of trial of knowing that Mr. Wright was a witness as he had never come forward." Memorandum in Support of Appellant's Amended PCRA Petition, 5/9/19, at 2 (unnumbered pages).

Thus, the record simply does not support the PCRA court's determination that Appellant offered no explanation in the at-issue PCRA petition for his failure to uncover the new evidence contained in the Wright affidavit at an earlier time. Appellant specifically averred such a reason in both his (premature) January 2018 petition, and in his May 2019 amended petition that explicitly incorporated the January 2018 petition. Moreover, that reason was self-evident from the Wright affidavit that was attached to both petitions. Thus, on the record before us, we reject the PCRA court's conclusion that Appellant failed to satisfy the timeliness exception set forth in Section 9545(b)(1)(ii) based solely on the pleadings. Accordingly, we conclude that the PCRA court erred by denying Appellant's petition as untimely without a hearing.

**2.**

In his second issue, Appellant challenges the PCRA court's conclusion that Appellant's petition "is meritless even if it was timely filed." PCO at 6. An after-discovered-evidence claim warrants relief when

- 13 -

the petitioner … demonstrate[s] the new evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, … the proposed new evidence must be producible and admissible.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018).

The entirety of the PCRA court's analysis under the after-discovered evidence standard is contained in a single paragraph in its Rule 1925(a) opinion, wherein the court reasons as follows:

Wright's affidavit only serves to attack Green's credibility regarding the identification of the person who shot at him and what was said to him before he was shot at. Additionally, Wright's affidavit discusses an incident from nine years earlier and is vague as to the time and place of the incident—referring to "Old York Road" and "late night." The affidavit also gives no indication of who the alleged shooter is referring to or talking to, *i.e.*, Wright or an accomplice. Thus, at most, Wright's affidavit would exculpate [Appellant] if he was convicted of shooting at Wright. But Wright's affidavit does not exculpate [Appellant] for shooting at Green or Williams. *See* … *Padillas*, 997 A.2d [at] 365 ([stating] "a court must assess after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial was granted[]")

PCO at 6. Thus, the PCRA court essentially determined that Appellant failed to demonstrate that the after-discovered evidence contained in the Wright affidavit 1) was not solely for the purposes of impeachment, and 2) would

- 14 -

have compelled a different verdict because it did not tend to exculpate Appellant for shooting at Green.[8]

Appellant first argues that the after-discovered evidence would not have been offered solely to impeach the Commonwealth's witnesses. He points out that Green "testified at trial that [Appellant] was *not* the shooter." Appellant's Brief at 15 (emphasis in original). Thus, Appellant contends that the content of Wright's affidavit "is consistent with Green's testimony while also providing new, after-discovered evidence that did not come in through any other witness at trial." *Id.*

Indeed, at Appellant's trial, Green admitted that he was the target of a shooting on April 9, 2008, and further acknowledged that he had spoken to police soon thereafter, but he denied knowing, or having previously identified, Appellant as the shooter, based on his own recollection of the event at the time of trial. N.T. Trial, 5/22/13, at 57-64. Green claimed he could not recall anything about the incident due to his ostensible intoxication on that date, as well as the passage of five years from the incident until the time of trial. *Id.*

---

[8] The PCRA court also presumably found that Appellant had not acted with due diligence in discovering the new evidence contained in the Wright affidavit under the after-discovered-evidence test, commensurate with its analysis under the newly-discovered evidence exception to the PCRA court's timeliness requirements. For the same reasons discussed *supra*, we conclude that, on the face of his petition and the Wright affidavit, and in the absence of an evidentiary hearing, Appellant satisfied the due diligence standard for both tests. Furthermore, it is immediately apparent that because the Wright affidavit describes a separate assault from that which involved victims Green and Williams, the new evidence is not merely cumulative or corroborative of the evidence produced at Appellant's trial.

at 66-68. He specifically denied that his faltering memory was due to a threat of retaliation. *Id.* at 65. However, when shown the statement he made to police, Green did not deny having identified Appellant at that time, and he did not deny having previously picked Appellant out of a photo array; he instead maintained that he had no recollection of having done so. *Id.* at 71-74.[9] Nevertheless, Green refused to identify Appellant as his assailant in court, and specifically denied that Appellant had shot him during cross-examination. *Id.* at 80.

Given the peculiarities of Green's testimony at trial, we agree with Appellant that Wright's affidavit cannot be said to provide only evidence with which to impeach Green's trial testimony. Even if the after-discovered evidence tends to impeach Green's pre-trial statements to police identifying Appellant, it could also be read to corroborate Green's trial testimony insofar as that testimony called into question his prior identification of Appellant as his assailant.

In any event, Appellant maintains that "Wright does not purport to have heard the conversation Green had with one of the gunmen, and none of his proposed testimony has to do with what Green claims to have seen and heard." Appellant's Brief at 15. We agree. Wright's proposed testimony does

---

[9] At one point, Green indicated that he did not want to "mak[e] stuff up[,]" and stated: "If it's right here, then this is a statement and this is what was written and this is what was said. So[,] I don't remember none of this. This happened five years ago. I'm just telling you what's on the paper." *Id.* at 72.

not directly refute the credibility of Green's pretrial identification of Appellant regarding a separate incident. Thus, we disagree with the PCRA court's conclusion that Wright's affidavit would be used solely to impeach the credibility of a witness.[10]

Nevertheless, the PCRA court also held that Appellant's after-discovered evidence claim was not meritorious based on its cold reading of the Wright affidavit, concluding that Wright's proposed testimony would not likely result in a different verdict. PCO at 6. The sole issue litigated at Appellant's trial was whether Appellant was Green's assailant, and Green and Williams' identifications of Appellant were, at least in part, based upon the fact that Appellant went by the nickname, "ButterRoll." Appellant argues that evidence that Wright's assailant asked where "ButterRoll" was, in close proximity in time and location to the assault on Green, implies that the gunman was seeking Appellant and, therefore, that Appellant was not one of Green's attackers. Appellant's Brief at 14.

In its cursory analysis, the PCRA court rejects this theory on two grounds. First, the court suggests that the Wright affidavit "is vague as to the time and place of the incident—referring to 'Old York Road' and 'late night.'" PCO at 6. However, as Appellant explains, the PCRA court's conclusion in that regard "suggest[s] that [Wright] is de[scribing] a different shooting, on the

_____

[10] Given the fact that Williams' identification of Appellant was primarily based on Green's interaction with the shooter, we reach the same conclusion with regard to Williams' identification of Appellant. Wright's affidavit would not serve merely to impeach Williams' prior testimony.

same night, at the same approximate time and location and while the gunman was asking for [Appellant]. This is implausible." Appellant's Brief at 17. We agree with Appellant, insofar as we read the Wright affidavit on its face *without the benefit of an evidentiary hearing*. Whether Wright's affidavit is describing an incident that is sufficiently close in temporal and spatial proximity to justify making inferences about the identity of Green's assailant are factual questions that can only be resolved with further development of the record at an evidentiary hearing. Wright's affidavit does not obviously preclude that both incidents occurred close in time and location to one another, assuming that Wright's account was credible. Furthermore, Wright's credibility also was not properly assessed because the PCRA court failed to conduct an evidentiary hearing.

The PCRA court also found Appellant's after-discovered-evidence claim lacked merit because Wright's "affidavit also gives no indication of who the alleged shooter is referring to or talking to, *i.e.*, Wright or an accomplice." PCO at 6. Although the PCRA court failed to elaborate on this point, we assume it meant that Wright's assailant *might have been* speaking to his cohorts, not Wright. Wright wrote in his affidavit that, after he began running away from the gunman, he tripped, at which point "there was another tall skinny guy standing over top of me with a gun pointed at my head yelling[,] 'where is ButterRoll, where is ButterRoll[?'] I told him I didn't know then I heard a gun shot go off…." Wright Affidavit at 1 (single page). This at least suggests that Wright believed that the assailant was talking to him, and the

affidavit certainly does not foreclose that possibility on its face. Any ambiguity in that regard should have been resolved at an evidentiary hearing, and contemporaneous to an assessment of Wright's credibility.

We further note that the PCRA court did not suggest, nor in our view does the record of Appellant's trial suggest, that the evidence of Appellant's guilt was overwhelming, such that the new evidence presented in Wright's affidavit could not possibly have made a difference at Appellant's trial. There was no physical evidence supporting Appellant's conviction. The was no evidence of Appellant's guilt beyond Green's and Williams' identification of Appellant to police, and there was no audio or video recordings of their respective statements. While the evidence at trial was legally sufficient to support a conviction, it was not so overpowering that we can reasonably say that additional evidence that calls into question the victims' identification of Appellant to police would not have made a difference at Appellant's trial, especially given the fact that Green and Williams essentially recanted substantial portions of those statements to police at trial. That is, we cannot say this without the benefit of an evidentiary hearing where Wright's proposed testimony can undergo further development by Appellant and further scrutiny by the Commonwealth. In sum, we conclude that the PCRA court erred in denying Appellant's petition without a hearing on the merits where there are issues of material fact left unresolved, and where Appellant's petition is not patently frivolous. *See Khalifah*, *supra*.

Accordingly, we vacate the order denying Appellant's PCRA petition, and remand for an evidentiary hearing to address Appellant's after-discovered-evidence claim. The PCRA court may also address the timeliness of Appellant's petition under the newly-discovered evidence exception if new facts pertaining to that exception come to light at the hearing.

Order **vacated**. Case **remanded**. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2022